BRITANNIA SHIPPING CORPORATION, Plaintiff, *v.* GLOBE AND RUTGERS FIRE INSURANCE COMPANY OF THE STATE OF NEW YORK, Defendant.

Supreme Court, New York County, September 16, 1930.

*Weschler & Kohn* [*Walter T. Kohn* of counsel], for the plaintiff.

*Barry, Wainwright, Thatcher & Symmers* [*H. Stewart McDonald* of counsel], for the defendant.

FRANKENTHALER, J. In October, 1921, while anchored at Colgate's pier, Jersey City, N. J., in the waters of New York harbor, plaintiff's tug disappeared under circumstances which justify the inference that it was stolen. Recovery is now sought upon an insurance policy issued by the defendant to cover " any loss

* * * brought about by any and all risks, perils or dangers of the Seas, Bays, Harbors, Rivers and Fires."

The term "perils of the sea" covers "all kinds of marine casualties due to the fortuitous action of the sea, such as sinking or capsizing (2 Arnould Marine Ins. [10th ed.] § 812; *Clinchfield Fuel Co.* v. *Ætna Ins. Co.*, 121 S. C. 305; 114 S. E. 543), but it includes only a *sea* damage, occurring at sea, a peril *of* the sea. A peril *on* the sea is not enough. (*Cary* v. *Home Ins. Co.*, 235 N. Y. 296, 300.) Plaintiff's counsel apparently recognizes that a loss by theft is not a "peril" of the sea or of the harbor, but he contends that such a loss is a "risk" of the harbor, and as such within the coverage of the policy. Various dictionary definitions of the words "risk" and "peril" are set out in plaintiff's brief in an attempt to substantiate the distinction sought to be made. An examination of these definitions, however, reveals that each of the words refers to exposure to mischance or evil or harm, and the court is unable to see sufficient difference between the meanings of the respective terms to warrant a holding that a loss by theft, though not a "peril," is a "risk" of the harbor.

It is true that the Court of Appeals in *Pitcher* v. *Hennessey* (48 N. Y. 415) differentiated between "risks of navigation" and "perils of navigation." That case, however, concerned itself with the question of which of the parties to a contract had assumed the responsibility for the inability of a vessel to pass through the locks of a canal, and there is nothing in the opinion which even remotely suggests that a loss by theft would be regarded as a "risk" of navigation or of the seas or harbors. The court's decision was based upon a careful analysis of the particular contract before it, in the setting in which it was made, in an endeavor to ascertain the intention of the parties, and no attempt was made to lay down any general rules of construction. If a loss by theft may be considered a "risk" of the harbor, it would seem to follow that a loss by fire would also come within the scope of that term. The fact that it was deemed necessary to make express provision for coverage of losses by fire appears to indicate that the word "risks" was not thought or intended to have the comprehensive import which the plaintiff here seeks to attribute to it.

In *Bird* v. *St. Paul Fire & Marine Ins. Co.* (224 N. Y. 47) the policy insured against loss by reason of the "Adventures and perils * * * of the Sounds, Harbors, Bays, Rivers, Canals and Fires." A fire broke out in the freight yards of the Lehigh Valley Railroad Company, in the harbor of New York, and reached cars loaded with dynamite. The resulting explosions caused a concussion of the air which damaged plaintiff's vessel. The Court

of Appeals held that there was no loss by " Fires " within the meaning of the policy and that there could be no recovery by the assured. The words " adventures and perils * * *· of the sounds, harbors, bays, rivers, canals and fires " would seem to be substantially as comprehensive as those employed in the policy here involved. " Adventure " is defined as the " encountering of risks." (Funk & Wagnall's New Standard Dict. 1928.) *Yet the loss there was not regarded as one of the adventures or perils of the harbor*, the court's inquiry being addressed solely to the question of whether it was a loss by fire. In *Listers Agricultural Chemical Works* v. *Home Insurance Co.* (202 Fed. 1011) a lighter, while proceeding through New York harbor, was damaged by an explosion of dynamite at a nearby pier and barge. It was held that the loss was not covered by a policy insuring against " perils of the harbor."

In the light of the foregoing the court is of the opinion that the loss complained of is not one " brought about by any and all risks, perils or dangers of the seas, bays, harbors, rivers and fires."

A second ground upon which the plaintiff seeks to recover is that the policy expressly covers a loss by " piracy." The argument is made that the theft of the tug was an act of piracy. Piracy at common law is defined as the commission of " those acts of robbery and depredation upon the high seas, which, if committed on shore, would amount to felony there." (48 C. J. 1206.) Piracy by statute is also confined to the high seas. Section 481 of title 18 of the United States Code reads as follows: " Piracy: punishment. Whoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life." Other forms of piracy are also expressly limited to the " high seas " (U. S. Code, tit. 18, § 495), or else clearly inapplicable to the facts of the instant case (U. S. Code, tit. 18, §§ 485, 493 and 496). The term " high seas " was the subject of an extended and learned discussion by the United States Supreme Court in *United States* v. *Rodgers* (150 U. S. 249). The court, Mr. Justice FIELD writing the opinion, said (at p. 254): " The term ' high seas ' does not, in either case, indicate any separate and distinct body of water; but only the open waters of the sea or ocean, as distinguished from ports and havens and waters within narrow headlands on the coast." Repeatedly throughout its opinion the court emphasizes the fact that the term " high seas " refers only to open and uninclosed waters as distinguished from those surrounded or inclosed between narrow headlands or promontories. In *The Cuzco* (225 Fed. 169) it was held that a tort committed on a vessel lying at a dock in Victoria, in the waters of the harbor of

British Columbia, was not committed on the high seas. In its criminal legislation Congress has " sedulously evinced the intention to use the term high seas in its popular and natural sense, and in contradistinction to mere tidewaters flowing in ports, havens and basins." ( *United States* v. *Wilson*, 28 Fed. Cas. No. 16731.) Thus, the crime of " maltreatment of crew by officers of vessel " may be committed " on the high seas, *or on any other waters within the admiralty and maritime jurisdiction of the United States.*" (U. S. Code, tit. 18, § 482.) The same is true of various other crimes. (U. S. Code, tit. 18, §§ 483, 484, 488, 489, 490, 491, 492 and 497.) (Italics the court's.) In *United States* v. *Pirates* (5 Wheat. [U. S.] 184) the Supreme Court defined piracy as " robbery on the seas " so as to include a vessel lying at anchor in an open roadstead, but it emphasized the fact that the ship was " neither in a river, haven, basin or bay " (p. 200).

It would seem, therefore, that a tug, moored to a pier in New York harbor, may not be said to be upon the high seas and that its theft was accordingly not an act of piracy. In the circumstances it becomes needless to consider whether the crime of piracy may be committed without the use of force or violence.

There is yet a third theory of liability invoked by the plaintiff, namely, that the theft was due to the negligence of the master and crew of the vessel and, therefore, within the provision of the policy, which reads: " This insurance also to cover, subject to the special terms of this policy, loss of and/or damage to hull or machinery through the negligence of master, mariners, engineers, or pilots * * *." The defendant argues that this provision, known as the " Inchmaree " clause does not render the insurer liable for loss due to the negligence of the crew unless that negligence caused the loss or damage by one of the perils insured against. The plaintiff's answer to this is that the negligence of the crew did cause the loss of the vessel by one of the perils insured against, to wit, piracy. As the court is of the opinion that the loss was not caused by piracy, it is unable to agree with plaintiff's contention in this respect. Apart from this, even if it be assumed that there was negligence on the part of the crew, it seems that the proximate cause of the loss was theft, though negligence may have made the theft possible. Accordingly, no cause of action on the theory of negligence has been established. The views herein expressed are not inconsistent with the decision of Mr. Justice O'MALLEY, of the Appellate Division, then sitting at Special Term (affd., 218 App. Div. 830), denying the defendant's motion for judgment on the pleadings, dismissing the complaint for insufficiency. The opinion written at the time by the learned justice stated that there was

considerable force in the defendant's contentions, but that he was reluctant to dismiss the complaint because of the novel character of the questions involved and that he thought that the plaintiff should be given an opportunity to present all possible facts to the court. It is not unlikely, under the circumstances, that the affirmance of the order was predicated on similar considerations.

In accordance with the stipulation entered into at the outset of the trial, a verdict is directed for the defendant, with an exception to the plaintiff. The motions to strike out plaintiff's Exhibits 6, 7, 8, 9 and 10 are denied, with exceptions to the defendant.