WILLIAM N. CARY et al., Appellants, v. THE HOME INSURANCE COMPANY, Respondent.

**Insurance (marine) — policy insuring vessel from adventures and perils of harbor — burden of proof on plaintiff, in action on policy — proof necessary to make out prima facie case — meaning of phrase " perils of sea " — seaworthiness — ship's cargo must be properly stowed — exception in policy where peril arose from unseaworthiness — no recovery where vessel lists and turns over at mooring owing to leakiness and improper stowage of cargo.**

1. In an action to recover upon a policy of marine insurance, the burden of proof rests upon the plaintiffs to make out a *prima facie* case by showing that the loss arose from some of the perils covered by the policy and not from some of the excepted risks.

2. The phrase " perils of the sea " as used in a policy of marine insurance is not limited to extraordinary perils. It covers all kinds of marine casualties due to fortuitous action of the sea such as sinking or capsizing, but it includes only a SEA damage, occurring at sea, a peril *of* the sea. A peril *on* the sea is not enough.

3. A ship is seaworthy when reasonably fit in all respects to encounter the ordinary perils of the sea, incident to the adventure insured. To be seaworthy the ship's cargo must be properly stowed. If in handling

the cargo, it is negligently bestowed, not under any stress of circumstances, and the vessel thereby becomes unseaworthy, this is negligent navigation and an unnecessary increase of the risk.

4. Where the policy in suit excepted from its terms among other things all damage that may be done to the vessel from want of ordinary care and skill in loading and stowing the cargo of said vessel and from rottenness, inherent defects and other unseaworthiness, and the evidence does not establish that the vessel encountered any extraordinary danger or peril of the sea, such as stress of weather, winds and waves, lightning, tempests or rocks, but it appears that the vessel after a short voyage in moderate weather, when moored in calm water, listed and turned over; that the cause was leakiness whereby water entered the hold and want of ordinary care in placing a portion of the cargo preparatory to unloading another portion of it which caused the cargo to roll when the vessel had listed sufficiently to put it in motion, a judgment of nonsuit was proper.

*Cary* v. *Home Insurance Co.,* 199 App. Div. 122, affirmed.

(Argued March 6, 1923; decided March 20, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 12, 1922, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*B. P. Wheat* and *E. R. Shepard* for appellants. Improper unloading is not an excepted risk under the policy. (*Griffey* v. *N. Y. Central Ins. Co.,* 100 N. Y. 417; *Pulaski* v. *Woodmen of the World,* 105 Misc. Rep. 740; 187 App. Div. 920; *Gordon* v. *Mass. Bonding & Ins. Co.,* 186 App. Div. 630; *Clover Crest Stock Farm* v. *Wyoming Valley Ins. Co.,* 108 Misc. Rep. 465; *Orient Ins. Co.* v. *Adams,* 123 U. S. 67; *Am.-Hawaiian Co.* v. *Bennett-Goodall,* 207 Fed. Rep. 210; *Matthews* v. *Hanover Ins. Co.,* 11 N. Y. 9; *Clark* v. *Mannheim Ins. Co.,* 210 S. W. Rep. 528.)

*William Van Wyck* and *James M. Gorman* for respondent. Plaintiffs did not prove that the disaster and the loss were due to a peril of New York harbor. (*Green* v. *Globe & Rutgers Fire Ins. Co.,* 200 App. Div. 343; *Berwind* v. *Greenwich Ins. Co.,* 114 N. Y. 231; *Van Wickle* v.

*Mechanics & Traders Ins. Co.,* 97 N. Y. 350; *Reilly* v. *Home Ins. Co.,* 81 App. Div. 314; *American Merchant Marine Ins. Co. of N. Y.* v. *Liberty Sand & Gravel Co.,* 282 Fed. Rep. 514, 516; *Richelieu & Ontario Nav. Co.* v. *Boston Ins. Co.,* 136 U. S. 408, 423; *The Gulnare,* 42 Fed. Rep. 861; *McKern* v. *Corporation of the Royal Exchange Assurance,* 85 Oreg. 652; *Swift* .v. *Union Insurance Co.,* 122 Mass. 573; *Cary* v. *Boyston F. M. Ins. Co.,* 107 Mass. 140.) Plaintiffs did not prove seaworthiness. (*American Ins. Co.* v. *Ogden,* 20 Wend. 287; *Van Wickle* v. *T. M. & T. Ins. Co.,* 97 N. Y. 350; 16 J. & S. 95; *Berwind* v. *Greenwich Ins. Co.,* 114 N. Y. 231; *Hoxie* v. *P. M. Ins. Co.,* 89 Mass. 211; *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21; *Moses* v. *Sun Mutual Ins. Co.,* 1 Duer, 159; *Tidmarsh* v. *Washington Farmers & Mechanics Ins. Co.,* 4 Mason, 446; *Rogers* v. *Sun Mutual Ins. Co.,* 14 J. & S. 65; *Lunt* v. *Boston Marine Ins. Co.,* 6 Fed. Rep. 562; *Ward* v. *China Mut. Ins. Co.,* 44 Fed. Rep. 43.) Plaintiffs, upon whom was the burden, offered no evidence whatever to prove that " ordinary care and skill in loading and stowing the cargo " were used. Conversely the proof was clear that the disaster was proximately due to their want. (*The Titania,* 19 Fed. Rep. 101; *Reilly* v. *Home Ins. Co.,* 81 App. Div. 314; *The Randwyck,* 226 Fed. Rep. 724; *Grace* v. *Luckenbach S. S. Co.,* 248 Fed. Rep. 955; 267 Fed. Rep. 676; *The Media,* 179 Fed. Rep. 781; *Harloff* v. *Barber & Co.,* 150 Fed. Rep. 192; *The Whitlieburn,* 89 Fed. Rep. 528; *L. V. R. R. Co.* v. *B. E. D. Terminal,* 234 Fed. Rep. 310; *The Kate,* 91 Fed. Rep. 679; *The Oneida,* 128 Fed. Rep. 687.) The nonsuit was proper. (*National Dredging & Lighterage Co.* v. *Turney Transfer Co.,* 281 Fed. Rep. 315; *The Evelyn,* 282 Fed. Rep. 250.)

POUND, J. The action is on a policy of marine insurance on the good barge called " Cary Brick Company No. 8." It is a time policy (1 Arnould on Marine Ins. [10th ed.] § 436) running for one year from the 23d of

August, 1917, to the 23d of August, 1918.   The·barge
was confined to the waters of New York harbor and adja-
cent waters.    The policy in usual terms covered the
adventures and perils of the harbor.   It excepted from
its terms among other things all damage that· may be
done to the vessel (a) from the want of ordinary care
and skill in loading and stowing the cargo of said vessel,
and (b) from rottenness,· inherent defects and other
unseaworthiness.

The barge was a deck scow, built to carry brick, 115
feet from stem to stern, 34 feet beam.   On June 10, 1918,
she loaded in Jersey City with 13 carloads of freight,
600 tons round steel bars laid fore and aft in the bottom
of the cargo, and kegs of nails, nuts and hoop iron placed
on top of the barge. ·

She was then towed safely to the Bush docks in Brooklyn
where she tied alongside a lighter which was· alongside
a steamship.   She listed a little to starboard when
making this trip.   As she lay alongside the scow a carload
of the cargo, weighing 40 to 45 tons, was taken from the
stern of the boat and placed 20 or 30 feet forward on
top of the rest of the cargo by stevedores employed by
the consignee, in order to get at a portion of the cargo
resting below for future unloading.   This put her head
down some and listed her more to starboard.   She was·
then towed a short distance to the other side of the ship
and tied up to the pier.

Captain Olson, who was alone on the scow, pumped
her out and went ashore for his supper at about nine
o'clock in the evening.   He returned about eleven o'clock.
She then listed eight or ten inches.   More water was in
the hold.   Within an hour and a half after his return, the
cargo rolled off the deck and the scow righted herself.

The first question that presents itself is whether plain-
tiffs sustained the burden of proof resting on them and
made out a *prima facie* case by showing that the loss arose
from some of the perils covered by the policy and not

from some of the excepted risks; that capsizing was due to a peril of the sea and was not due to the defective condition of the scow or to improper loading and stowing of the cargo. (*Berwind* v. *Greenwich Ins. Co.*, 114 N. Y. 231, 235.)

The phrase " perils of the sea " as used in a policy of marine insurance is not limited to extraordinary perils. It covers all kinds of marine casualties due to the fortuitous action of the sea such as sinking or capsizing (2 Arnould on Marine Ins. [10th ed.] § 812; *Clinchfield Fuel Co.* v. *Ætna Ins. Co.*, 114 S. E. Rep. 543), but it includes only a *sea* damage, occurring at sea, a peril *of* the sea. A peril *on* the sea is not enough.

In order to bring the loss within the terms of the policy plaintiffs must also establish affirmatively that the scow was seaworthy at the time the cargo rolled off the deck. A ship is seaworthy when reasonably fit in all respects to encounter the ordinary perils of the sea, incident to the adventure insured. (*The Southwark*, 191 U. S. 1, 8.) To be seaworthy the ship's cargo must be properly stowed. " One of the conditions implied by law in case of an insurance upon cargo, is that it shall be stowed in a safe and proper manner, and in the usual and customary place for the carriage of goods of the description insured; and any breach of this warranty by which the risk is varied and the perils insured against increased, vitiates the policy." (*Leitch* v. *Atlantic Mutual Ins. Co.*, 66 N. Y. 100, 108.) It is the duty of the insured to keep the vessel seaworthy during the risk if practicable to do so. If in handling the cargo, it is negligently bestowed, not under any stress of circumstances, and the vessel thereby becomes unseaworthy, this is negligent navigation and an unnecessary increase of the risk, both at common law (*Paddock* v. *Franklin Ins. Co.*, 28 Mass. [11 Pick.] 227) and under a fair reading of the terms of the policy.

The evidence in this case does not establish that the scow encountered any extraordinary danger or peril of the sea, such as stress of weather, winds and waves,

lightning, tempests, rocks. If she were seaworthy, she would endure all ordinary perils incident to mere floating on the surface of the water. (*Van Wickle* v. *Mechanics & Traders' Ins. Co.*, 97 N. Y. 350.)

The question is: " Did the scow encounter a peril of the sea which disabled and rendered her unseaworthy or was her unseaworthiness the cause of her disaster? " It appears that the scow after a short voyage in moderate weather, when moored in calm water, listed and turned over; that the cause was (a) leakiness whereby the water entered the hold, coupled with (b) want of ordinary care in placing a portion of the cargo preparatory to unloading another portion of it, which caused the cargo to roll when the ship had listed sufficiently to put it in motion. No other explanation suggests itself. She was a leaky scow with a cargo improperly stowed. In short she was unseaworthy, and her own defects, not the perils or dangers of the sea, were the cause of her misfortune.

The judgment below was, therefore, right and should be affirmed, with costs.

Hogan, Cardozo, McLaughlin, Crane and Andrews, JJ., concur; Hiscock, Ch. J., concurs in result.

Judgment affirmed, etc.