**WESTERN ASSUR. COMPANY OF TORONTO, CANADA, v. SHAW.**

(Circuit Court of Appeals, Third Circuit. February 27, 1926.)

No. 3425.

**1. Insurance ☞646(6).**

To recover under maritime insurance policy for loss of barge, libelant must show loss from a peril insured against.

**2. Insurance ☞403.**

"Perils of the sea" within maritime policies are abnormal, causes and extraordinary circumstances, such as stress of weather, winds, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

**3. Insurance ☞403—Swell from passing steamer held not "peril of sea" within policy insuring sunken barge.**

Swell from passing steamer, if cause of barge sinking while moored at wharf in Delaware river, held not a peril of the sea within policy sued on.

**4. Insurance ☞416—Barge held unseaworthy as result of negligence and unskillfulness in loading within policy exception.**

Barge loaded with round bottomed 180-ton boilers, which were left unchocked and unshored over night during which it sunk, held unseaworthy as result of "want of ordinary care and skill in loading" within exception in insurance policy.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Libel by Maurice R. Shaw, managing owner of the derrick barge Holly, against the Western Assurance Company of Toronto, Canada. Decree for plaintiff, and defendant appeals. Reversed, with directions to dismiss libel.

Everett H. Brown, Jr., of Philadelphia, Pa., for appellant.

Willard M. Harris, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This was an action to recover on a contract of maritime insurance against the Western Assurance Company for the total loss of the barge Holly, while moored at a wharf in Chester, Pa. She was insured "against the adventures and perils of the harbors, bays, sounds, seas, rivers," etc. She was loaded with three large boilers, weighing 60 tons each, which she was to take to Norfolk, Va. They were lying in the middle of the barge, lengthwise and end to end. On the night of December 18, 1919, she listed to the starboard and sank early the next morning. When she listed, the boilers rolled to starboard and caused or hastened her sinking.

The learned trial judge found that "the final plunge was due to the swell of a steamer breaking over the part of the deck, which served as a washboard and filling her," that this was a peril against which she was in-

sured, and so decreed that the respondent pay for the loss sustained. The case is here on appeal.

The insurance company urged, as a defense in the District Court and here, that the libelant did not establish a loss by "perils of the seas" against which the company insured, and that the proximate cause of the loss was the unseaworthiness of the boat.

[1, 2] In order to recover, it is necessary for the libelant to bring his claim for loss within the provisions of the policy and establish that the loss was caused by one of the perils against which the barge was insured. Swan v. Union Insurance Company, 16 U. S. (3 Wheat.) 168, 4 L. Ed. 361; Soelberg v. Western Assurance Co., 119 F. 23, 55 C. C. A. 601. It is difficult to give a definition which will neither be too narrow nor too broad, of the phrase, "perils of the sea." In defining it, courts have used various expressions which cannot be easily reconciled. The learned trial judge defined a "peril of the sea" as "any threatening danger from the sea," the "operative cause," "the efficient cause," "the causa causans." In an enlarged sense all losses from maritime adventures arise from perils of the sea, but such losses do not come under this phrase within the meaning of maritime insurance policies. "Perils of the sea" against which underwriters insure are confined to extraordinary occurrences, such as stress of weather, winds and waves, lightning, tempests, rocks, etc. Hazard v. Insurance Co., 33 U. S. (8 Pet.) 557, 584, 8 L. Ed. 1043. If a loss arises from the ordinary circumstances or wear and tear of a voyage, the insurer is not liable because a seaworthy vessel is supposed to endure usual and customary occurrences. The words are therefore used to describe abnormal causes and extraordinary circumstances. Coles v. Insurance Company, 6 Fed. Cas. No. 2988, page 65; Moores v. Louisville Underwriters (C. C.) 14 F. 226; Nord-Deutscher Lloyd v. President, etc., of North America, 110 F. 420, 49 C. C. A. 1.

The testimony by which libelant sought to establish that a steamer in fact passed which might have produced a swell is very unsatisfactory. By leading questions, Nicholein A. Delegeorgen, captain of the barge, was led to say that waves from a passing steamer caused the barge to roll. But, on the contrary, he said again and again that he did not see any boat or anything on the river at that time.

[3] Assuming, however, that the swell from a passing steamer did cause the barge to roll, the further question arises: Was it a "peril of the sea," within the meaning of the policy? Was it an extraordinary, abnormal occurrence against which the insured could not protect himself with ordinary precaution? Or was it a normal, customary circumstance that may occur at Chester every day? The passing of steamers along the Delaware between the port of Philadelphia and the sea is a normal occurrence that may be expected at any time. It was not extraordinary or unusual. It does not seem to us that waves from a passing steamer washing against the shores of the Delaware are a "peril of the sea" against which the barge was insured. The following statement from the opinion of the learned trial judge indicated that he was inclined to this view, or at least had misgivings about the contrary conclusion:

"It is difficult for any one to believe that a barge of a size and in condition to navigate the waters of the Delaware and Chesapeake Bays, in the lower reaches of which heavy weather and a nasty sea are often encountered, would be swamped by the swell from a passing steamer. If the latter fact was all which appeared, the mind would draw and would cling to the inference of unseaworthiness."

[4] The respondent says that the barge was unseaworthy in respect to its loading, and that this was the proximate cause of the loss. While the boilers rested on cradles or saddles, it is admitted that they had not been, as yet, shored or chocked at the sides, so as to keep them steady and from rolling. If they had been, the testimony tends to show, and we think does show, that they would have remained stationary when the barge rolled. If they had so remained, the barge would not have sunk.

The testimony conclusively establishes that to leave round boilers, such as the three loaded on the Holly were, unchocked and not shored over night is unsafe and improper stowage or loading. The boilers were loaded by the Sun Ship Building Company, and the captain of the barge asked the riggers, intrusted with the loading, to chock the boilers before they stopped work that night, and they said: "We got no time to-night, will do it in the morning," but "the morning" was too late. Before they arrived "in the morning," the barge sank.

Whether waves from a passing steamer or something else caused the barge to list, the fact is that she did list. This list would have been harmless, if the boilers had remained stationary for the barge would immediately have straightened up. But when the boilers, weighing 180 tons, rolled to her starboard

side, she could not do so. The failure, therefore, to shore or chock the boilers, as safe and proper loading required, set in motion a train of consequences—the opening of seams, consequent leaking, the fastening of wire rope or cables to the boilers and wharf—that caused the sinking and occasioned the loss. It seems to us that there is no escape from the conclusion that there was "want of ordinary care and skill in loading" and that this resulted in an unseaworthy condition of the barge with respect thereto. Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395; Hagemeyer Trading Co. v. St. Paul Fire & Marine Insurance Company (C. C. A.) 266 F. 14; Cary v. Home Insurance Co., 139 N. E. 274, 235 N. Y. 296, 1923 A. M. C. 438.

The policy excepted from the risks insured against all claims arising "from the want of ordinary care and skill in loading and stowing the cargo." The proofs not only show that the claim does not come within the risks against which the barge was insured, but they clearly show that it arises from the want of ordinary care and skill in loading, and comes within the above exception.

Therefore the decree is reversed, with directions to the District Court to dismiss the libel, with costs.