PLYMOUTH RUBBER COMPANY, INC. *vs.* INSURANCE COMPANY
OF NORTH AMERICA, INC., & another.[1]

Suffolk.    March 20, 1984. — July 17, 1984.

Present: PERRETTA, ROSE, & KASS, JJ.

*Contract*, Marine insurance. *Insurance*, Perils clause, Marine insurance.

The perils clause of a marine insurance policy did not provide coverage for
    cargo damage resulting from negligent handling of the cargo while it
    was stored on a dock. [367-368]
Where the perils clause of a marine insurance policy was unambiguous, the
    circumstance that the policy was issued for goods "at dockside" and not
    on a vessel could not be considered to extend the perils clause to cover
    risks to the goods while on land. [368-369]
A shore clause in a marine insurance policy providing for certain risks while
    the cargo was on shore, including "risks of collision, derailment, over-
    turning or other accident to the conveyance," did not cover damage to
    cargo resulting from negligent handling of the cargo while it was stored
    on a dock. [369-370]

CIVIL ACTION commenced in the Superior Court on De-
cember 31, 1976.

A motion for summary judgment was heard by *Hallisey*, J.

*William I. Cowin* for the plaintiff.

*Richard J. McCarthy* for Insurance Company of North
America, Inc.

KASS, J. Plymouth Rubber Co., Inc. (Plymouth Rubber),
seeks to recover under a marine insurance policy issued by
Insurance Company of North America, Inc. (INA), for cargo
damage resulting from rough handling and improper storage
on the dock at Khorramshahr, Iran. We have the following
facts from the pleadings, affidavits, and a deposition filed in
connection with a motion for summary judgment.

[1] Fred S. James & Co. of New England, Inc.

In May of 1973, Clarence H. Tenney, then Plymouth Rubber's quality control agent, travelled to the port of Khorramshahr to collect samples of pipewrapping material and adhesive primer which Plymouth had shipped there. Tenney's mission was stimulated by rejection of the goods as nonconforming by Plymouth Rubber's customer, United Iranian Oil Company. On the basis of Tenney's observation that Plymouth Rubber's goods were stored outdoors at the dock and that some of the packaging was damaged from exposure to the weather, Plymouth Rubber took out a "Special Marine Policy" of insurance. The INA policy, obtained through Fred S. James & Co. of New England, Inc. (James), covered Plymouth Rubber's "Pipe wrap, PVC tape, [and] chemicals . . . [w]hile at: Dockside Khoranshak [*sic*], Iran." The policy, which was effective May 11, 1973, did not cover a vessel.

On two subsequent trips to Iran in the spring and summer of 1974, Tenney observed that many of Plymouth Rubber's goods, which remained stored outdoors, were damaged. Some PVC tapes had melted from exposure to the sun, drum tops had rusted, and there was evidence of water contamination. In addition, several rolls of pipe wrapping were cut, unwound, dirty or broken. During his visits, Tenney saw that other cargo at the port was handled roughly. He reported that the storage area was extremely congested, that cranes and forklift trucks were operated at speeds too fast for the crowded conditions, and that cargo was frequently dropped from cranes onto tall piles of goods which collapsed from the extra weight. Tenney felt that much of the damage to Plymouth Rubber's goods, such as loose and flattened rolls and broken spools, resulted from such rough handling at dockside.

Plymouth Rubber brought an action against INA and James, seeking to recover from INA under the terms of the policy. In the alternative, i.e., if the policy did not cover the damage to the goods, Plymouth Rubber's complaint charged James with failure to perform its contract to secure insurance for damage to the goods stored at Khorramshahr and, in consequence, with a violation of G. L. c. 93A, § 2(*a*). In addition, Plymouth

Rubber charged INA with James' breach of contract under an agency theory and — it seems inevitably — with a violation of G. L. c. 93A, § 2(*a*).

A judge of the Superior Court granted INA's motion for summary judgment on those counts of the complaint which alleged that INA was liable to Plymouth Rubber under the terms of the policy, and that INA had violated G. L. c. 93A. Plymouth Rubber waived the count which sought to bind INA, under an agency theory, for James' breach of contract. Upon allowance of a motion under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), the judgment in favor of INA became final and Plymouth Rubber appealed. Plymouth Rubber's claims against James remain to be tried.

INA seeks to limit its liability under the policy to a standard clause in the insurance form, the "Shore Clause," on the basis of typewritten language on the face of the contract which reads, "Coverage as per Shore Clause above" followed by a schedule of the amount of insurance for various time periods. Plymouth Rubber argues that the policy of insurance is not so limited and that INA must also be liable for damage falling within the "Perils Clause," another standard clause in the insurance form. Although typewritten language in a contract normally controls if it is inconsistent with other printed language, *Bluewaters, Inc.* v. *Boag,* 320 F.2d 833, 835 n.4 (1st Cir. 1963), we need not decide if any inconsistency arises from the typewritten language in the instant case. The only clause in addition to the Shore Clause upon which Plymouth Rubber seizes is the Perils Clause, and we have no difficulty in deciding that the damage to Plymouth Rubber's goods while dockside at Khorramshahr does not fall within the coverage of that clause.

The Perils Clause provides, "PERILS CLAUSE: Touching the adventures and *perils* which this Company is contented to bear, and takes upon itself, they are *of the seas*, fires, assailing thieves, jettisons, barratry of the master and mariners, *and all other like perils*, losses and misfortunes (illicit or contraband trade excepted in all cases), that have or shall come to the hurt, detriment or damage of the said goods and merchandise, or

any part thereof" (emphasis supplied). To prevail on its theory that the damage to its cargo falls within the coverage of the Perils Clause, Plymouth Rubber must show that such damage resulted from "perils of the seas" or "other like perils."

The Supreme Court has construed "perils of the seas" to include "losses from *extraordinary occurrences* only; such as stress of weather, winds and waves, lightning, tempests, rocks, [etc.] . . . and not those ordinary perils which every vessel must encounter." *Hazard* v. *New England Marine Ins. Co.,* 33 U.S. (8 Pet.) 557, 585 (1834) (emphasis supplied). Thus, in *Hazard,* the Supreme Court upheld an instruction to a jury that if damage to a vessel by worms was an ordinary occurrence in the Pacific Ocean, then damage of that kind was not covered under the Perils Clause. In *Commercial Trading Co.* v. *Hartford Fire Ins. Co.,* 466 F.2d 1239, 1245 (5th Cir. 1972), misdelivery of the cargo was held not to come within the "other like perils" portion of the clause, since that phrase referred to perils "very similar to or very much like th[ose] enumerated [in the Perils Clause]," quoting from *Feinberg* v. *Insurance Co. of No. America,* 260 F.2d 523, 527 (1st Cir. 1958).

In the instant case, the damage to Plymouth Rubber's goods while stored on land at Khorramshahr resulted neither from an extraordinary risk nor one "peculiarly associated with maritime voyages." See *Southport Fisheries, Inc.* v. *Saskatchewan Govt. Ins. Office,* 161 F. Supp. 81 (E.D.N.C. 1958). 11 Rhodes, Couch's Cyclopedia of Insurance Law § 43:87, at 67 (2d ed. rev. 1982). See also *id.* §§ 43:92-43:125. *Underwriters' Agency* v. *Sutherlin,* 55 Ga. 266, 272 (1875), on which Plymouth Rubber relies to support its position that damage to the stored goods by rain should fall within the Perils Clause, is inapposite. The court in *Sutherlin* was faced with construction of the "perils of navigation" clause, which is broader than the "perils of the seas" clause. See *Lipshitz* v. *New Zealand Ins. Co.,* 34 Ga. App. 825, 834 (1926).

Even in its extremity, the plaintiff in *Commercial Trading Co.* v. *Hartford Fire Ins. Co.,* 466 F.2d at 1245, felt compelled, in order to make its case, to argue that the mishap it had suffered

"reeked with the smell of the sea." While chary of adopting sniff tests as a basis for construing clauses in an insurance policy, we find the metaphor helpful. As its Eighteenth Century style suggests, the Perils Clause of an open marine cargo policy has a long tradition. *Id.* at 1240 and 1242. It has been construed to refer to damage from the sea and occurring at sea, or, at least, on the water. *Cary* v. *Home Ins. Co.*, 235 N.Y. 296, 300 (1923). 11 Rhodes, Couch's Cyclopedia of Insurance Law § 43:101 (2d ed. rev. 1982). Although a vessel need not be on the high seas to invoke the Perils Clause, it must be water borne. See *Hill* v. *Union Ins. Soc. of Canton, Ltd.*, 61 Ont. L.R. 201, 206 (1927). Compare *Swift* v. *Union Mut. Marine Ins. Co.*, 122 Mass. 573, 575 (1877), where the Perils Clause covered loss of a ship which came apart while beached for repairs in Panama, but where the injury to the ship occurred when she struck floating ice while cruising for whales in the Arctic Ocean. Compare also *Ellery* v. *New England Ins. Co.*, 8 Pick. 14 (1829), in which the insurer was held liable where the ship was only partially water borne and was lost when a gust blew her over while she was being hauled out on a railway. There is, however, nothing redolent of the sea and its hazards that we associate with driving fork lifts as if they were "dodge 'ems" in an amusement park.

So, for example, loss of cargo by reason of negligence in loading or unloading does not come within the perils of the seas coverage. *J.A. Jones Constr. Co.* v. *Niagara Fire Ins. Co.*, 170 F.2d 667, 668 (4th Cir. 1948). Mishandling of cargo which causes a leaky barge to capsize, i.e., the intervention of negligent management of the vessel, has been held to fall outside the coverage of the clause. *Cary* v. *Home Ins. Co.*, 235 N.Y. at 300-301. See to the same effect, although based on slightly different language in the insurance contract, *Paddock* v. *Franklin Ins. Co.*, 28 Mass. 227, 235-236 (1831).

Perhaps recognizing that conventional construction of the Perils Clause would not cover this damage, which was neither extraordinary nor "of the seas," Plymouth Rubber urges that the

insurance contract must be read in light of the circumstances existing at the time the contract was made. See *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.*, 131 Mass. 164, 165 (1881); *Trustees of Thayer Academy* v. *The Corp. of the Royal Exch. Assur. of London.*, 281 Mass. 150, 155 (1932). Because the policy was issued for goods "at dockside" and did not cover a vessel, Plymouth Rubber argues that these circumstances require that the Perils Clause be extended to cover risks reasonably expected when the goods are on land.

Commercial context is of assistance in construing ambiguous provisions in a contract, or when it is necessary to fill in missing pieces. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1979). Restatement (Second) of Contracts § 202 (1979). Courts cannot, however, use commercial context to override express provisions in a contract. A decisional patina of several centuries makes the Perils Clause inapplicable. Had the insured examined its policy, it could not reasonably have understood that it afforded protection against loss from negligent handling of its property on the dock in Khorramshahr, even though that may have been precisely what Plymouth Rubber was trying to insure against. Compare *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980). Unlike the policy in the *Slater* case, Plymouth Rubber did not receive an "all risks" policy. Compare also *By's Chartering Serv., Inc.* v. *Interstate Ins. Co.*, 524 F.2d 1045, 1047 nn.1 & 2 (1st Cir. 1975), which draws a distinction between the coverage of a Perils Clause and an all risks policy. The damage to Plymouth Rubber's goods while stored at Khorramshahr simply was not the type of damage contemplated by the "perils of the seas" or "other like perils" portions of the Perils Clause.

The other clause under which Plymouth Rubber seeks to recover is the Shore Clause. That clause provides, "SHORE CLAUSE: Where this insurance by its terms covers while on docks, wharves or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment,

overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise F.P.A." Plymouth Rubber argues that the term "collision" is ambiguous, since it could refer to generic collisions (such as a forklift bumping into cargo on dock), or only to collisions of the conveyance. Given this alleged ambiguity, Plymouth contends that the Shore Clause must be construed against the drafter, INA, and in favor of coverage.

We see no reason to torture the language of the Shore Clause. The term "collision" appears in the context of a phrase which refers to "risks of collision, derailment, overturning *or other accident to the conveyance . . .*" (emphasis added). The word "collision" does not stand in isolation, but must be read in conjunction with the remainder of the phrase. In context, we construe the risk of collision as referring to the conveyance, e.g., a truck or rail car. "When . . . words are plain and free from ambiguity they must be construed in their usual and ordinary sense." *Sherman* v. *Employers' Liab. Assur. Corp.,* 343 Mass. 354, 356 (1961). See generally as to the Shore Clause, Buglass, Marine Insurance & General Average in the United States 66-67 (2d ed. 1981).

Plymouth Rubber failed to argue in its brief that any error attended the award of summary judgment to INA on the G. L. c. 93A count, and we treat the point as waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any event, in light of the discussion above, and Plymouth Rubber's waiver of that count in its complaint which charged INA on an agency theory, it is apparent that there was no G. L. c. 93A violation on the part of INA.

*Judgment affirmed.*