<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2056

                 MERCHANTS INSURANCE COMPANY OF
                      NEW HAMPSHIRE, INC.,

                     Plaintiff - Appellee,

                               v.

            UNITED STATES FIDELITY AND GUARANTY CO.,

                     Defendant - Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Joseph L. Tauro, U.S. District Judge]

                      ____________________

                             Before

                     Selya, Circuit Judge,

                 Coffin, Senior Circuit Judge,

and Shadur, Senior District Judge.

                     _____________________

   James R. Loughman, with whom Donovan & O'Connor was on brief
for appellant.
   Nina E. Kallen, with whom Neville & Kelley was on brief for
appellee.

                      ____________________

                         May 1, 1998
                      ____________________

         SHADUR, Senior District Judge.  United States Fidelity
and Guaranty Co. ("USF&G") appeals the order of the United States
District Court for the District of Massachusetts granting a Fed. R.
Civ. P. ("Rule") 56 summary judgment motion filed by Merchants
Insurance Company of New Hampshire, Inc. ("Merchants") and denying
the corresponding cross-motion filed by USF&G.  Merchants had
brought a diversity-of-citizenship action, pursuant to the
Declaratory Judgment Act (28 U.S.C.  2201), seeking a declaration
that it was entitled to contribution from USF&G for the attorneys'
fees and expenses incurred in defending and settling a personal
injury action brought against Merchants' insured D'Agostino
Associates, Inc. ("D'Agostino").  We affirm.
Facts
    In 1992, general contractor D'Agostino entered into a
contract with two Massachusetts towns to remove and replace a
bridge.  In connection with that project D'Agostino hired
subcontractor Great Eastern Marine Service, Inc. ("Great Eastern").  
Although Merchants had already issued a commercial general
liability policy to D'Agostino, the subcontract required Great
Eastern to list the general contractor as an additional insured on
its own commercial general liability insurance policy issued by
USF&G.
    Of particular importance here, the additional insured
endorsement ("Endorsement") provided D'Agostino with coverage "but
only with respect to liability arising out of 'your work' for that
[added] insured by or for you."  In part that language is clear
indeed:  "You" means Great Eastern, while D'Agostino is "that
[added] insured."  We will later address the meaning of the
potentially more murky aspect of the Endorsement--what is intended
by its "arising out of" phrase.
    On October 28, 1992, Great Eastern's employee Daniel
Woundy ("Woundy") sustained serious injuries while working at the
job site when a D'Agostino employee accidentally caused Woundy's
arm to become pinned between two pieces of demolition equipment.  
Almost a year later Woundy and his wife (collectively "Woundys")
brought suit against D'Agostino, alleging that his physical
injuries and her loss of consortium were "a direct and proximate
result" of the general contractor's negligence.  USF&G then refused
Merchants' demand to defend that underlying action, explaining that
the Endorsement did not afford D'Agostino coverage for its own
negligence.  
    On March 25, 1995 Merchants settled Woundys' claims
against D'Agostino for $250,000, an amount to which USF&G did not
object.  Merchants had also incurred attorneys' fees and expenses
aggregating $28,297.21.  Shortly thereafter Merchants brought this
federal court action against USF&G to seek contribution for half of
the total amount it had incurred in defending and settling Woundys'
personal injury and loss of consortium claims.  After the district
court ruled in Merchants' favor on the parties' cross-motions for
summary judgment, this appeal followed.
                       Standard of Review
    We review the district court's grant of summary judgment
de novo (Vartanian v. Monsanto Co., 131 F.3d 264, 266 (1st Cir.
1997)).  Familiar Rule 56 principles impose on a party seeking
summary judgment the burden of establishing the lack of a genuine
issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986)).  As we stated in Woods-Leber v. Hyatt Hotels of
P.R., Inc., 124 F.3d 47, 49 (1st Cir. 1997)(citations and internal
quotation marks omitted):
         The genuineness requirement signifies that
         a factual controversy must be sufficiently
         open-ended to permit a rational factfinder
         to resolve the issue in favor of either
         side.  The materiality requirement
         signifies that the factual controversy
         must pertain to an issue which might
         affect the outcome of the suit under the
         governing law.   

    For Rule 56 purposes we read the record in the light most
favorable to the non-moving party, drawing all reasonable
inferences in its favor (Reich v. John Alden Life Ins. Co., 126
F.3d 1, 6 (1st Cir. 1997)).  In that regard "[a]n inference is
reasonable only if it can be drawn from the evidence without resort
to speculation" (Mulero-Rodrguez v. Ponte, Inc., 98 F.3d 670, 672
(1st Cir. 1996), quoting Frieze v. Boatmen's Bank, 950 F.2d 538,
541 (8th Cir. 1991)).   
    Where as here cross-motions for summary judgment are
involved, "the court must consider each motion separately, drawing
inferences against each movant in turn" (Reich, 126 F.3d at 6).  
Because here neither the facts nor any potential inferences are in
dispute, that Janus-like dual perspective creates no risk that both
motions might have to be denied.  Instead the parties are at odds
about whether as a matter of law the district court erred in
holding that D'Agostino's liability arose out of Great Eastern's
work performed on its behalf, thus entitling D'Agostino to coverage
under the Endorsement.
Choice of Law
    Before we turn to the merits of the parties' respective
positions, we must first identify the applicable substantive law,
a subject on which both policies are silent.  For cases sounding in
diversity, the Erie v. Tompkins mandate to look to state law for
the substantive rules of decision includes the application of the
forum's choice of law doctrines (Klaxon Co. v. Stentor Elec. Mfg.
Co., 313 U.S. 487, 496 (1941); New Ponce Shopping Ctr., S.E. v. Integrand Assurance Co., 86 F.3d 265, 267 (1st Cir. 1996)).  But
here both Merchants and USF&G have eschewed any such inquiry,
instead citing directly to Massachusetts' internal law.  In that
situation Bird v. Centennial Ins. Co., 11 F.3d 228, 231 n.5 (1st
Cir. 1993) teaches:
         Because the parties agree that
         Massachusetts law governs this dispute,
         and because there is at least a
         "reasonable relation" between the dispute
         and the forum whose law has been selected
         by the parties, we will forego an
         independent analysis of the choice-of-law
         issue and apply Massachusetts law.

We do the same here.
                       General Principles
    Under Massachusetts law the interpretation of an
insurance policy and the determination of the policy-dictated
rights and obligations are questions of law, appropriate grist for
the summary judgment mill (see Assetta v. Safety Ins. Co., 682
N.E.2d 931, 932 (Mass. App. Ct. 1997)).  Hence we review de novo
the district court's determination that the Endorsement covers
D'Agostino for its own negligence.
    Hakim v. Massachusetts Insurers' Insolvency Fund, 675
N.E.2d 1161, 1164 (Mass. 1997) confirms the applicability of
general rules of contract construction in construing an insurance
policy:
         The interpretation of an insurance
         contract is no different from the
         interpretation of any other contract, and
         we must construe the words of the policy
         in their usual and ordinary sense.

Where policy provisions are ambiguous--that is, "[w]here the
language permits more than one rational interpretation" (Boston
Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d
1156, 1159 (Mass. 1989)(internal quotation omitted))--the reading
most favorable to the insured must prevail (Hazen Paper Co. v. USF&G, 555 N.E.2d 576, 583 (Mass. 1990)).  That contra proferentem
principle applies with added rigor in determining the meaning of
exclusionary provisions (id.).
     Insurance Coverage:  Duties To Defend and To Indemnify
    Any liability insurer has a duty to defend an underlying
third-party action against its putative insured if the allegations
in the complaint are "reasonably susceptible of an interpretation
that they state[] or adumbrate[] a claim covered by the policy
issued to its insured" (New England Mut. Life Ins. Co. v. Liberty
Mut. Ins. Co., 667 N.E.2d 295, 297 (Mass. App. Ct. 1996)(internal
quotation omitted)).  "This is true even if the claim is baseless,
as it is the claim which determines the insurer's duty to defend"
(Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir.
1997)(internal quotation marks omitted)).
    It is true "that an insurance company's duty to defend is
broader than its duty to indemnify" (Boston Symphony, 545 N.E.2d at
1158).  But USF&G's rejection of any participation in the
underlying defense (as tendered to it by Merchants) also carries
with it USF&G's liability for the cost of settlement in addition to
the expenses of defending the lawsuit.  As Camp Dresser & McKee,
Inc. v. Home Ins. Co., 568 N.E.2d 631, 636 (Mass. App. Ct. 1991)
(numerous citations omitted) has held:
         Our cases generally have recognized the
         peril implicit in unjustified disclaimer
         decisions, and held an insurer making such
         a decision liable for the reasonable costs
         of both defense and settlement.

And more recently Polaroid Corp. v. Travelers Indem. Co., 610
N.E.2d 912, 921 (Mass. 1993) has confirmed that proposition.
    We turn then to the Endorsement, which provides in its
entirety:
         WHO IS AN INSURED (Section II) is amended
         to include as an insured the person or
         organization shown in the Schedule [in
         this instance D'Agostino]. (sic) but only
         with respect to liability arising out of
         "your work" for that insured by or for
         you.

In turn the USF&G policy defines "your work" as:

         a.  Work or operations performed by you [Great Eastern]
    or on your behalf; and

         b. Materials, parts or equipment furnished in
    connection with such work or operations.

    USF&G urges that the district court erred in holding that
D'Agostino's liability "arose out of" Great Eastern's work because
Great Eastern did not proximately cause Woundy's injury (it will be
recalled that one of D'Agostino's own employees was at fault).  
That contention presupposes that the phrase "arising out of"
imports proximate causation and therefore operates to exclude all
claims that stem directly from D'Agostino's own negligence.  But
whether or not the construction advocated by USF&G might be
considered to distort the usual and ordinary meaning ascribed to
the quoted phrase (see Plymouth Rubber Co. v. Ins. Co. of N. Am.,
465 N.E.2d 1234, 1238 (Mass. App. Ct. 1984), declining to "torture"
the meaning of a clause in an insurance contract where it was
understandable in its "usual and ordinary sense"), what controls
here is that such a reading would contravene established state law.
    Beyond question, under Massachusetts law the phrase
"arising out of" denotes a level of causation that lies between
proximate and actual causation.  As recently as 1996 that state's
intermediate appellate court said in New England Mut. Life, 667
N.E.2d at 298:
         The usual meaning ascribed to the phrase
         "arising out of" is much broader than
         "caused by"; the former phrase is
         considered synonymous with "originate" or
         "come into being."

And later in the same year the Massachusetts Supreme Judicial Court
confirmed in Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245
(Mass. 1996):
         The expression "arising out of" indicates
         a wider range of causation than the
         concept of proximate causation in tort
         law.

By way of further explanation, Rischitelli, id. went on to say:
         However, the expression does not refer to
         all circumstances in which the injury
         would not have occurred "but for" the
         involvement of a motor vehicle.

    In that light it is plain that the allegations in
Woundys' Complaint raised the potential for policy coverage,
triggering USF&G's duty to defend.  And the line of Massachusetts
cases referred to earlier teach that USF&G's dishonor of that duty
to defend triggered USF&G's additional duty to indemnify.
    It is undisputed, as the Complaint alleged, that "[a]t
the time of his accident Woundy was working within the scope of his
employment for Great Eastern" (R. 5 10).  And it is equally beyond
cavil that Great Eastern was in turn working for D'Agostino
pursuant to its subcontract.  Woundy's injury "arose out of" Great
Eastern's work in the sense that the harm occurred while he was
cutting and removing a section of the bridge, a task that was
assigned to Great Eastern in the Sherman's Bridge project.  Under
an intermediate causation test, that causal relationship justifies
the conclusion that D'Agostino's liability for the harm to Woundy
"arose out of" Great Eastern's work for D'Agostino.  More than "but
for" causation existed.  It was not simply because the two
companies happened to be working in the same location that Woundy
was injured by a D'Agostino employee; rather, the injury was a
consequence of the work that Great Eastern was performing.
    That causal connection between Woundy's injury and Great
Eastern's work for D'Agostino suffices to satisfy the intermediate
causation standard (see Transamerica Ins. Group v. Turner Constr.
Co., 601 N.E.2d 473, 476 (Mass. App. Ct. 1992), followed in a non-
Massachusetts case, American States Ins. Co. v. Liberty Mut. Ins.
Co., 683 N.E.2d 510, 513 (Ill. App. 1997)).  As the district court
reasoned (slip op. at 6):
         Unlike the facts of Rischitelli, the facts
         of the present case fall squarely within
         Rischitelli's definition of "arising out
         of."  Woundy was employed by Great Eastern
         and suffered his injuries in the course
         of, and contemporaneously with, Great
         Eastern's work.  The injuries sustained by
         the plaintiff in Rischitelli, by contrast,
         occurred subsequent to the automobile
         accident and were not otherwise related to
         the insured's use of his automobile.  
         Furthermore, Woundy's injuries were not
         the result of "intentional wrongdoing" by
         D'Agostino.  Again, this differs from
         Rischitelli, in which the insured's
         injuries were the result of a battery
         committed by the other driver.  The
         connection between D'Agostino's liability
         and Great Eastern's work, therefore, is
         stronger than the simple "but for"
         connection rejected in Rischitelli.

    We therefore agree with the district court's conclusion
that under Massachusetts law D'Agostino's liability "arose out of"
Great Eastern's work on its behalf.  In those terms the Endorsement
covers D'Agostino both for its own negligence and to the extent
that it might be deemed vicariously liable for Great Eastern's
negligence.  In light of that coverage, USF&G must bear half of
Great Eastern's total burden running to Woundys.
                  Contra Proferentem Approach
    It would make no difference to our decision if well-
established Massachusetts case law had not so plainly dictated that
reading of the Endorsement's language.  Even if the "arising out
of" phrase were instead to be viewed as ambiguous, the end result
would be the same.
    As we have noted earlier, the contra proferentem doctrine
dictates that an ambiguous provision in an insurance policy that
purports to limit coverage must be construed liberally in favor of
the insured and against the insurer (see Hazen, 555 N.E.2d at 583).  
Under that approach too, the phrase "arising out of" would not be
read to exclude coverage for D'Agostino's own negligence.  Though
we have not had occasion to speak to that proposition, McIntosh v. Scottsdale Ins. Co., 992 F.2d 251, 254-55 (10th Cir. 1993) has
collected cases from numerous jurisdictions holding that
additional-insured endorsements such as the one at issue here cover
an additional insured for its own negligence related to the work of
the named insured.   
    After all, if USF&G had really intended to limit coverage
under the additional insured Endorsement to those situations in
which an added insured such as D'Agostino was to be held
vicariously liable only for the negligence of a principal insured
such as Great Eastern, USF&G was free to draft a policy with
qualifying language that expressly implemented that intention (see,
e.g., Consolidation Coal Co. v. Liberty Mut. Ins. Co., 406 F. Supp.
1292 (W.D. Pa. 1976), pointing to the phrase "but only with respect
to acts or omissions of the named insured" in the additional-
insured endorsement as limiting the coverage of an additional
insured to situations where it was the named insured's negligence
that exposed the additional insured to liability).  USF&G did not
do so.  Instead it used language requiring only that the general
contractor's liability must arise out of Great Eastern's work.  In
view of the narrow construction to be given to ambiguous
exclusionary provisions, this alternative analytical road leads to
the same destination:  USF&G's obligation to bear half of the
financial burden of Woundys' claims.
                           Conclusion
    Because the district court correctly determined that
Merchants was entitled to a judgment as a matter of law, Merchants'
Rule 56 motion was properly granted, while USF&G's cross-motion was
of course properly denied.  We AFFIRM.

</body>

</html>