van Gestel, J.
This matter comes before the Court on a renewed motion by defendant Lake Vista Villa Limited Partnership (“Lake Vista”) seeking summary judgment on Counts I, II, V-IX and XI of the plaintiffs verified complaint.[1] The plaintiff, Belmont L.V. Land Limited Partnership (“Belmont”), opposes the motion procedurally[2] and substantively.

BACKGROUND

Primarily, Belmont alleges that Lake Vista breached an agreement to purchase real property known as the Polo Club Apartments, a 560-unit, residential apartment complex located in Las Vegas, Nevada (the “Property”). What is really at issue are the requirements of the purchase and sale agreement and whether that agreement was breached by Lake Vista.
Belmont nevertheless also includes a multifarious array of charges against Lake Vista, including: breaches of the implied covenant of good faith and fair dealing; fraudulently inducing Belmont to enter into the agreement; conspiracy with the other defendant, Claremont Management Corporation (“Claremont”), to commit fraud; interference with Belmont’s advantageous business and contractual relations; and violations of G.L.c. 93A.
Lake Vista is a Massachusetts limited partnership that owns commercial real estate in Nevada, Georgia and North Carolina. Claremont is a 30-year-old Massachusetts corporation that manages commercial and residential real estate in seven different states. Claremont is affiliated with Lake Vista, but it is a separate and independent corporation.
After a series of negotiations that began with the introduction of Lake Vista to Belmont by a Boston-based real estate broker, Lake Vista offered to purchase the Property from Belmont for $3.5 million over the mortgage. The Property’s mortgage of $31.7 Million *139 was insured by the U.S. Department of Housing and Urban Development (“HUD”).
Lake Vista’s agreement to purchase the property was conditioned upon HUD’s approval of Lake Vista’s assumption of the HUD mortgage not later than August 31, 1998. The August 31, 1998, deadline for obtaining the HUD approval was included in the purchase and sale agreement at Belmont’s insistence. The language of Article 6(a) reads:
If the HUD Approval [of Lake Vista’s mortgage assumption] shall not have been received by or before August 31,1998, then and without the requirement of any further act or agreement of the parties, this Agreement and all of the unaccrued rights and obligations of the parties hereto shall cease and terminate and the Deposit shall be paid to the Buyer.
Faced with the August 31, 1998, deadline and delays caused by third parties, Lake Vista proposed that the parties extend the deadline for HUD approval at least to October 30, 1998. Lake Vista sent a proposed extension amendment to Belmont on August 9, 1998. Belmont, however, refused to execute the extension amendment unless it was conditioned upon Lake Vista’s payment of an additional $100,000 deposit.
On August 24, 1998, Belmont and Lake Vista reached consensus and executed an amendment to the agreement. As demanded by Belmont, the amendment provided, in part, that: “It is a condition precedent to the effectiveness of this Agreement that [Lake Vista] pay One Hundred Thousand Dollars ($100,000) as an additional deposit and that [Belmont] receives acknowledgment of this payment from the escrow agent.” The amendment also reaffirmed that Lake Vista had no obligation to purchase the Property until HUD approved the loan assumption.
After the close of business on Friday, August 28, 1998, Lake Vista delivered to Belmont a notice, in writing, that Lake Vista would not proceed with the purchase because (1) the Property had serious deficiencies which had been misrepresented by Belmont, and (2) the HUD approval had not been received. Belmont did not actually see the notice until Monday, August 31, 1998.
Lake Vista never paid the additional $100,000 deposit, and HUD never gave the requisite approval of the loan assignment by August 31, 1998.
While there remain many other facts involving the relationship between and among Belmont, Lake Vista and Claremont, for purposes of Lake Vista’s renewed motion the foregoing are material and undisputed.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time Inc, 404 Mass. 14, 17 (1989).
The principal issue that must be examined is whether Lake Vista, on the record before this Court, breached the purchase and sale agreement.
The Court pauses here, however, to observe a time-consuming irritant that seems all too frequently to clutter and burden litigation in this Session: the excessive pleading and litigating of peripheral counts that are clearly remote — if not barred entirely by the agreement — from the principal issues. Here, for example, the Court is faced with a failed real estate transaction predicated on a detailed purchase and sale agreement entered into between two extremely sophisticated parties, each with substantial legal representation throughout. Yet the claimed breach of contract has spawned an eleven-count complaint, all but the first of which counts wander further and further from the agreement, which itself declares in Article 8 that it is the entire agreement between the parties. Article 8 is worth reciting here. It reads:
Entire Agreement Herein: The parties understand and agree that their entire agreement is contained herein and that no warranties, guaranties, statements, or representations shall be valid or binding on any party unless set forth in this Contract. It is further understood and agreed that all prior understandings and agreements heretofore had between the parties are merged in this Contract which alone fully and completely expresses their agreement and that the same is entered into after full investigation, neither party relying on any statement or representation not embodied in this Contract. This Contract may be changed, modified, altered or terminated only by a written agreement signed by the parties hereto.
This Court intends to adhere strictly to the foregoing language, selected as it was by the contracting parties for the purpose of governing their relationship regarding the Property.
The agreement’s plain language becomes critical. The interpretation of an unambiguous agreement is an issue of law for the Court. Contract language must be construed in its usual and ordinary sense. 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A contract provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation, supra, 426 Mass. at 381. The mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish *140 ambiguity. Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
“The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to the agreement as a rational business instrument in order to carry out the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Court except insofar as it may turn on facts in genuine dispute. Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999).
In construing the purchase and sale agreement in issue here, the Court must give effect to the intentions of the parties, as expressed in the language employed, considered in the light of the context of the transaction and the purposes to be accomplished. Starr supra, 420 Mass. at 190; Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981).
Here, where Belmont, a sophisticated and knowledgeable entity, chose to embody its agreement to sell the Property to Lake Vista in a detailed and carefully crafted written instrument, perhaps more than in other situations it is entitled to and should be held to the contractual language it chose. Similarly, Lake Vista is not unsophisticated, and it too must be held to the same kind of contractual interpretation. Tue Court itself must be careful not to impose its own views on the contracting parties or to let matters outside the four corners of the instrument modify its expressed statements. “Courts cannot . . . [,for example,] use commercial context to override express provisions of a contract.” Plymouth Rubber Co., Inc. v. Insurance Company of North America, Inc., 18 Mass.App.Ct. 364, 369 (1984).
It is undisputed that HUD never approved Lake Vista’s assumption of Belmont’s mortgage by August 31, 1998, as required by Article 6(a) quoted above. The Court must then determine whether the date for such approval was extended. The subject being real estate, any such extension would have to be in writing, as is called for in Article 8 quoted above. The only written extension brought to the attention of the Court, however, contains a clearly stated condition precedent: “that [Lake Vista] pay One Hundred Thousand Dollars ($ 100,000) as an additional deposit and that [Belmont] receives acknowledgment of this payment from the escrow agent.” “A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.” Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991). The condition here was never met and, thus, the time for the HUD approval was never extended. With no extension of the date for HUD approval “then and without the requirement of any further act or agreement of the parties, th[e] [agreement and all of the unaccrued rights and obligations of the parties [tjhereto . . . cease and terminate.” Agreement, Art. 6(a).
Consequently, Lake Vista is entitled to a judgment in its favor on Belmont’s breach of contract claim and a declaration that the purchase and sale agreement expired in accordance with its terms. Nor can there be any claim for a breach of an implied covenant of good faith and fair dealing when there is no breach of the underlying agreement. The requirement of good-faith performance, under the implied covenant of good faith and fair dealing, ultimately is circumscribed by the obligations actually contained in the agreement. AccuSoft Corp v Palo, 237 F.3d31 (1st Cir. 2001).
Belmont’s fraud claim is, in essence, that Lake Vista represented that it would purchase the Property for $3.5 million over the existing mortgage and did not really intend to do so. To prove such a claim, there must be evidence that Lake Vista made a knowingly false statement, with the intent that Belmont rely upon the statement, and that Belmont did in fact rely upon the statement to its detriment. See, e.g., Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991). But here, sophisticated parties entered into a contract which terminated by its own language. Nothing has been shown to the Court that Lake Vista did not intend to abide by its contractual obligations when it first entered into the purchase and sale agreement. See McCartin v. Westlake, 36 Mass.App.Ct. 221, 230-31, n. 11 (1994). The only affidavit proffered on the point expressly denies such an intention, and that affidavit remains unchallenged. Further, of course, Art. 8 specifically recites that there were no representations relied upon by either party in entering into the agreement. Belmont’s relief, if any, is a claim for breach of contract or for specific performance of that contract. There is no valid fraud claim here.
Next, the Court looks to see if there is a civil conspiracy between Lake Vista and Claremont to defraud Belmont. Supposedly, the conspiracy was to have Claremont cause the Property to lose value during the short two-plus months it managed the Polo Club Apartments after the purchase and sale agreement was signed on June 23, 1998, and before August 31, 1998. Then, according to the allegations, Lake Vista would be able to purchase the Property for a lesser price. This, however, never happened. Lake Vista never purchased the property at any time.
There is no showing of any special kind of coercion exercised by the defendants over Belmont. See, e.g., Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). Nor was there any concerted action whereby liability can *141 be imposed on Lake Vista for the torts, if any, of Claremont. Id. And, of course, there were no damages. The conspiracy count cannot survive.
Next among the many counts of the complaint are those relating to interference with contractual or advantageous relationships. Again, no evidence of any contract or relationship has been brought to the attention of the Court, let alone any indication of an interference therewith. The vague allegations about tenants who left or tenants who never came, standing alone, are insufficient to prove interference on Lake Vista’s part. These counts must also fail.
Lastly,[3] in the absence of any demonstration of wrongdoing by Lake Vista, the ubiquitous c. 93A claim cannot stand.

ORDER

For the foregoing reasons, and on reconsideration of the previous action on its motion, this Court ALLOWS in its totality the renewed motion for summary judgment of the defendant Lake Vista Villa Limited Partnership. Counts I, II, V-IX and XI are dismissed as against Lake Vista Villa Limited Partnership, and a declaration should be entered in its favor to the effect that the purchase and sale agreement expired in accordance with its terms and therefore that Lake Vista is entitled to a return of the deposit.[4]

 The first decision on Lake Vista’s motion for summary judgment was rendered by another Justice of the Superior Court, who has since retired. Further discovery took place after the original denial, and the case is now on the eve of trial. Consequently, the Court believes it appropriate to consider this renewed motion at this time. See, e.g., Peterson v. Hopson, 306 Mass. 597, 603 (1940).

 See footnote 1, above.

 This Court does not consider Count XI as being a cause of action. It simply seeks to attach by trustee process funds held for the benefit of Lake Vista. This is a remedy, not a cause of action.

 Although no motion is before the Court on behalf of Claremont Management Corporation on any of the counts addressed above, the Court would consider such a motion if counsel believes it to be appropriate in light of the action taken here.