IAN M. STARR *vs.* LAURENCE S. FORDHAM & others.[1]

Suffolk. February 6, 1995. - May 1, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Partnership*, Attorneys, Withdrawal of partner, Fiduciary duty. *Fiduciary.*
*Contract*, Implied covenant of good faith and fair dealing, Construction
of contract, Damages. *Fraud. Interest. Damages*, Breach of fiduciary
duty, Interest. *Words*, "Liabilities."

In an action by an attorney against his former law partners to recover
   profits distributable pursuant to the partnership agreement and seeking
   damages for breach of fiduciary duty and fraudulent misrepresentation,
   there was no error in the judge's imposing on certain partners the bur-
   den of proving the fairness of their profit distribution to the plaintiff,
   where the partners had engaged in self-dealing in their actions [182-
   183], nor did the judge err in concluding, for the same reason, that the
   business judgment rule did not apply to the partners' actions [183-184].
In a civil action the judge's finding that certain partners of a law firm
   violated both their fiduciary duties and the implied covenant of good
   faith and fair dealing in their allocation of partnership profits to a with-
   drawing partner was not clearly erroneous [184-186], however, the
   judge incorrectly concluded that the partners' cash basis method of de-
   termining profits was unfair [186-187].
In a civil action the judge did not err in concluding that a founding part-
   ner in a law firm had misrepresented to a former partner the basis on
   which the firm's profits would be allocated among the firm's partners
   [187], that the former partner had reasonably relied on the representa-
   tions [187-188], that the former partner had relied on the representa-
   tions to his detriment [189], and that the representations directly con-
   flicted with the partners' intentions and actions vis à vis the former
   partner [189].
In a civil action, the judge correctly construed provisions of a partnership
   agreement to conclude that a former partner was not entitled to receive
   an allocation of accounts receivable or work in process as part of his

---

[1]Loyd M. Starrett; Barry A. Guryan; Brian W. LeClair; Laurence S.
Fordham, P.C.; and Loyd M. Starrett, P.C. Unless otherwise indicated, a
reference to "Fordham" and "Starrett" will be to those defendants in both
their individual and corporate capacities.

share of profits upon his withdrawal from the partnership, where the partnership's liabilities exceeded its assets at the time the partner withdrew. [189-194]

In an action brought by an attorney against a law partnership from which he had withdrawn, for violation of fiduciary duty and of the implied covenant of good faith and fair dealing, the judge correctly awarded the plaintiff prejudgment interest on his award of damages from the date on which the plaintiff filed his complaint where the other date from which interest could be computed, the date of the breach of contract, was not sufficiently established. [194-195]

CIVIL ACTION commenced in the Superior Court Department on October 2, 1987.

The case was heard by *Herbert Abrams*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*David A. Hoffman* (*John M. Kahn* with him) for the plaintiff.

*Brian W. LeClair* for Loyd M. Starrett & others.

*Harold Hestnes* for Laurence S. Fordham & another.

NOLAN, J. The plaintiff, Ian M. Starr, was a partner in the Boston law firm Fordham & Starrett (firm). After the plaintiff withdrew from the firm, he commenced this action to recover amounts to which he claimed that he was entitled under the partnership agreement. The plaintiff also sought damages for breach of fiduciary duty and fraudulent misrepresentation. The defendants, his former partners at the firm, counterclaimed that the plaintiff had violated his fiduciary duties to his partners and breached the terms of the partnership agreement.

After a jury-waived trial, a Superior Court judge concluded that Fordham, P.C., and Starrett, P.C. (founding partners), had violated their fiduciary duties to the plaintiff as well as the implied covenant of good faith and fair dealing in the partnership agreement when they determined the plaintiff's share of the firm's profits for 1986. The judge awarded the plaintiff damages of $75,538.48, plus interest from the date on which the plaintiff filed his complaint. The

judge also found that Fordham, in his individual capacity, had misrepresented to the plaintiff the basis on which the founding partners would allocate the firm's profits among the partners. The judge rejected, however, the plaintiff's claim that he was entitled to a "fair share" of the firm's accounts receivable and work in process for 1986. Finally, the judge entered judgment for the plaintiff on the defendants' counterclaims.

The plaintiff appeals from the judge's entry of judgment against him on his claim for a share of the firm's accounts receivable and work in process for 1986. The plaintiff also claims that the judge erred in awarding him prejudgment interest on his damages award only from the date on which he had filed the complaint. The founding partners and Attorneys Fordham and Starrett, in their individual capacities, cross appeal from the judge's finding that they violated their fiduciary duties and the implied covenant of good faith and fair dealing.[2] In addition, Attorney Fordham appeals from the judge's finding that he engaged in fraudulent misrepresentation. We affirm.

1. *Facts.* We summarize the judge's findings of fact. In 1984, the plaintiff was a partner in the Boston law firm Foley, Hoag & Eliot (Foley Hoag). The plaintiff specialized in corporate and business law. Although the plaintiff had become a partner at Foley Hoag in 1982, he was actively seeking to leave the firm in early 1984. During this time, the founding partners were also partners at Foley Hoag. Both men enjoyed outstanding professional reputations among their colleagues. Nevertheless, they agreed that they would withdraw from Foley Hoag in early 1985 in order to establish a new law firm with another established Boston attorney, Frank W. Kilburn.

Fordham invited the plaintiff to join the new law firm Kilburn, Fordham & Starrett in January, 1985. At first, the plaintiff was somewhat hesitant to accept the offer because

---

[2] Pursuant to Mass. R.A.P. 16 (i), 365 Mass. 860 (1974), the plaintiff at trial has been designated the appellant for this appeal.

he was not known as a "rainmaker" (i.e., an attorney respon-
sible for significant client origination) at Foley Hoag. Ford-
ham, however, assured the plaintiff that business origination
would not be a significant factor for allocating the profits
among the partners. Relying on this representation, the
plaintiff withdrew from Foley Hoag on March 1, 1985. The
founding partners and another attorney, the defendant Brian
W. LeClair, withdrew from Foley Hoag on March 4, 1985.

Prior to executing the partnership agreement, the plaintiff
informed Fordham that certain provisions in the agreement
disturbed him. The source of the plaintiff's disquiet was Par-
agraph 1 of the partnership agreement which vested in the
founding partners and Kilburn, the authority to determine,
both prospectively and retrospectively, each partner's share
of the firm's profits. Despite his concern, the plaintiff did not
claim at this time that the agreement contradicted Ford-
ham's representations to him that rainmaking would not be a
significant factor in distributing the firm's profits. Fordham
summarily dismissed the plaintiff's concerns, telling him, in
effect, to "take it or leave it." On March 5, 1985, the found-
ing partners, Kilburn, and LeClair each executed the part-
nership agreement for Kilburn, Fordham & Starrett. The
plaintiff also signed the agreement without objection and
without making any revisions. The defendant Barry A.
Guryan joined the new firm on March 11, 1985.

In August of 1985, Kilburn withdrew from the firm. Sub-
sequently, the firm assumed the name Fordham & Starrett.
In September, 1985, the partners met to consider entering
into a ten-year lease for office space. The partners were anx-
ious about both the length of the lease and the additional
cost; the new lease rate was double the rate that they had
been paying. After individually confirming their commitment
to shoulder the additional burden, the partners agreed to
enter into the lease.

The founding partners had divided the firm's profits
equally among the partners in 1985. Each of the five partners
received $11,602. In 1986, the firm's financial fortunes im-
proved significantly. On December 31, 1986, the firm's prof-

its were $1,605,128. In addition, the firm had $1,844,366.59 in accounts receivable and work in progress.

The plaintiff withdrew from the firm on December 31, 1986. The partners remaining in the firm were the founding partners, LeClair, and Guryan. When the plaintiff withdrew from the firm, the sum of the plaintiff's accounts receivable and work in process was $204,623. The firm eventually collected $195,249 of the plaintiff's total receivables. The founding partners determined the plaintiff's share of the firm's profits for 1986 to be 6.3% of the total profits. In allocating the firm's profits among the partners, the founding partners did not consider any of the firm's accounts receivable or work in process. In addition, the founding partners refused to assign any of the firm's accounts receivable or work in process to the plaintiff when he withdrew from the firm. The founding partners claimed that the express provisions of Paragraph 3 of the partnership agreement barred the plaintiff from recovering any share of his accounts receivable or work in process because the firm's liabilities exceeded its gross accounts receivable and work in process.

2. *Standard of review.* Under Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), a judge's finding is not to be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We apply this standard both to findings of subsidiary facts and to ultimate findings. *Page* v. *Frazier*, 388 Mass. 55, 61 (1983).

3. *1986 profits.* We address the defendants' arguments on cross appeal first, followed by the plaintiff's arguments.[3] The founding partners assert several arguments on appeal from the judge's finding that they violated their fiduciary duties and the implied covenant of good faith and fair dealing when they allocated to the plaintiff only 6.3% of the firm's profits for 1986. We address each in turn.

---

[3]LeClair and Guryan filed a single brief. Meanwhile, each of the founding partners has filed a separate brief. Nevertheless, they have incorporated by reference the arguments of their codefendants. See Mass. R. A. P. 16 (j), 365 Mass. 860 (1974).

A. *The burden of proof.* The founding partners claim that the judge erroneously imposed on them the burden of proving the fairness of their profit distribution to the plaintiff. We disagree.

Partners owe each other a fiduciary duty of the highest degree of good faith and fair dealing. *Cardullo* v. *Landau,* 329 Mass. 5, 8 (1952). *Shelley* v. *Smith,* 271 Mass. 106, 115 (1930). When a partner has engaged in self-dealing, that partner has the burden to prove the fairness of his actions and to prove that his actions did not result in harm to the partnership. See *Meehan* v. *Shaughnessy,* 404 Mass. 419, 441 (1989). In the present case, it is clear that the judge concluded that the founding partners had engaged in self-dealing. The judge found that the founding partners' determination of the plaintiff's share of the profits "positioned them on both sides of the transaction" because the percentage of the profits which they had assigned to the plaintiff had a direct impact on their own share of the profits. We cannot say that this conclusion was clearly erroneous. The founding partners were responsible for dividing the partnership's profits and assigning to each partner his respective share of the profits. Thus, the founding partners had some self-interest in designating each partner's respective share of the profits because the percentage of profits which they were assigning to the other partners had a direct effect on their own percentage of the profits. See *Sagalyn* v. *Meekins, Packard & Wheat, Inc.,* 290 Mass. 434, 439 (1935). As a result, we conclude that there was no error in the judge's imposing on the founding partners the burden of proving that their distribution of the firm's profits to the plaintiff was fair and reasonable. See *Meehan* v. *Shaughnessy, supra.*

B. *The business judgment rule.* The founding partners argue next that the judge erred in concluding that the business judgment rule does not preclude judicial review of their determination of the plaintiff's share of the 1986 profits. There was no error.

The test to be applied when one partner alleges that another partner has violated his duty of strict faith is whether

the allegedly violating partner can demonstrate a legitimate business purpose for his action. See *Zimmerman* v. *Bogoff*, 402 Mass. 650, 657 (1988). Nevertheless, the business judgment rule does not apply if the plaintiff can demonstrate self-dealing on the part of the allegedly wrongdoing partner. See *Johnson* v. *Witkowski*, 30 Mass. App. Ct. 697, 711-712 (1991). Having properly concluded that the founding partners had engaged in self-dealing when they assigned to the plaintiff his share of the profit, the judge made no error in concluding that the business judgment rule did not apply to the founding partners' actions.

C. *Fiduciary duties and covenant of good faith.* The founding partners argue that the judge's conclusion that they had violated both their fiduciary duties and the implied covenant of good faith and fair dealing when they allocated only 6.3 % of the firm's profits for 1986 to the plaintiff was clearly erroneous. We disagree.

An implied covenant of good faith and fair dealing exists in every contract. See *Drucker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976), quoting *Uproar Co.* v. *National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). Thus, an unfair determination of a partner's respective share of a partnership's earnings is a breach not only of one's fiduciary duty, see *Stratis* v. *Andreson*, 254 Mass. 536, 539 (1926), but also of the implied covenant of good faith and fair dealing. See *Drucker* v. *Roland Wm. Jutras Assocs., supra* at 385. A court has the power to determine whether a partner's share of the profits is fair and equitable as a matter of law. *Noble* v. *Joseph Burnett Co.*, 208 Mass. 75, 82 (1911). In the present case, the judge "vigorously scrutinized" the founding partners' determination of the plaintiff's share of the profits. See *Houle* v. *Low*, 407 Mass. 810, 824 (1990). The judge then made extensive findings concerning the fairness of the plaintiff's share of the profit distribution. The judge found that the plaintiff had produced billable hour and billable dollar amounts that constituted 16.4 % and 15 %, respectively, of the total billable hour and billable dollar amounts for all of

the partners as a group. The judge noted, however, that the founding partners distributed only 6.3% of the firm's 1986 profits to the plaintiff. Meanwhile, the other partners received substantially greater shares of the profits.[4] The judge concluded, therefore, that the founding partners had decided to exclude billable hour and billable dollar totals as a factor in determining compensation. The judge determined that this decision to exclude billable hour figures was unfair to the plaintiff and indicated that the founding partners had selected performance criteria in order to justify the lowest possible payment to the plaintiff.[5] The judge also noted that Fordham had fabricated a list of negative factors that the founding partners had used in determining the plaintiff's share of the firm's profits. As a result, the judge concluded that the founding partners had violated their respective fiduciary duties to the plaintiff as well as the implied covenant of good faith and fair dealing.[6] The judge also concluded that the plaintiff was entitled to 11% of the firm's profits for 1986 and awarded the plaintiff $75,538.48 in damages.[7]

---

[4]The plaintiff received $101,025.60. Meanwhile, the defendants Guryan and LeClair each received 18.75% ($301,025.60) of the firm's total profits. As a result, each of the managing partners kept for himself a 28.1% share of the profits, or $451,025.60 each. The judge did note, however, that the founding partners were not unfair in allocating to the plaintiff 7.2% of the firm's expenses in 1986.

[5]The judge compared the plaintiff's work performance directly to the work performance of the defendants Guryan and LeClair. The judge concluded that the plaintiff's "billable hours by working attorney" were 85% of the total billable hours that Guryan had worked and 77% of the total billable hours that LeClair had worked. The plaintiff's share of the profits, however, was only 34% of the amount which Guryan and LeClair each had received.

[6]The judge noted that Fordham and Starrett were the sole shareholders of Fordham, P.C., and Starrett, P.C., respectively. As the sole shareholders of a corporate general partner, the judge concluded that Fordham and Starrett were personally liable for the breaches of fiduciary duty by the founding partners. See *Tobias* v. *First City Nat'l Bank & Trust Co.*, 709 F. Supp. 1266, 1278 (S.D.N.Y. 1989). See also *Goldstein* v. *Barron*, 9 Mass. App. Ct. 644, 647 n.3, 650 (1980).

[7]The judge found that 11% of the profits was a more accurate reflection of the plaintiff's contribution to the firm's 1986 profits after considering the plaintiff's billable hour and billable dollar totals. In addition, the judge

Having examined the record, all 127 exhibits, and the judge's own findings of fact and rulings of law, we conclude that the judge's ultimate finding of liability was not clearly erroneous. We note that "[t]he authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52 (a) is not whether it would have made the findings the trial court did, but whether 'on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed.' " *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985), quoting *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). We cannot conclude that the judge committed a mistake in finding that the founding partners had violated both their fiduciary duties to the plaintiff and the implied covenant of good faith and fair dealing.

We disagree, however, with the judge's finding that the founding partners should have considered the plaintiff's accounts receivable and work in process at the end of 1986 in determining his share of the profits for 1986. The founding partners determined the firm's profits for 1986 on a cash basis. The founding partners, therefore, did not consider any of the firm's $1.8 million in accounts receivable and work in process when they distributed profits. As a result, the founding partners were not unfair in refusing to consider the plaintiff's accounts receivable and work in process for 1986 when they determined his share of the profits. The judge concluded that the founding partners were liable because they refused to consider billable hour and billable dollar figures when they

---

noted that Starrett had recommended that the plaintiff receive an 11% profit share in the fall of 1986 when the plaintiff first had informed his partners of his intention to withdraw from the firm. Eleven percent of the firm's total profits for 1986 amounted to $176,564.08. The judge then subtracted the 6.3% of the profits, which the plaintiff had already received, from $176,564.08 to arrive at $75,538.48.

allocated the firm's profits to the partners. In addition, the judge expressly calculated the plaintiff's damages award based on the founding partners' exclusion of the plaintiff's billable hour and billable dollar totals in determining profit allocations.

4. *Misrepresentation.* Fordham argues that the judge's conclusion that he had misrepresented to the plaintiff the basis on which the firm's profits would be allocated among the firm's partners was clearly erroneous. We disagree.

Statements of present intention as to future conduct may be the basis for a fraud action, if "the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 709 (1990), citing *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963). In the present case, the judge found that Fordham had represented to the plaintiff that business origination would not be a significant factor in determining the plaintiff's share of the firm's profits. The judge also noted that Fordham had made this representation to the plaintiff in January, 1985, while the plaintiff was still working at Foley Hoag. The judge found that the plaintiff had relied on this representation when he had left Foley Hoag to join Kilburn, Fordham & Starrett. Nevertheless, the judge decided that Fordham had intended client origination to be the dominant factor for allocating profit shares when he made his representation to the contrary to the plaintiff. In addition, the judge determined that the founding partners had assigned profit shares for 1986 based primarily on each partner's contribution to business origination. As a result, the judge concluded that Fordham had tortiously misrepresented to the plaintiff the basis on which the founding partners would distribute the firm's profits to the partners.

Fordham claims that the judge erred in concluding that the plaintiff's reliance on Fordham's representations was reasonable because the partnership agreement was a fully integrated instrument. We disagree.

An integration clause in a contract does not insulate automatically a party from liability where he induced another person to enter into a contract by misrepresentation. See *Bates* v. *Southgate*, 308 Mass. 170, 182 (1941). Nevertheless, if "the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." *Turner* v. *Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986). In the present case, the judge found that the partnership agreement did not contradict Fordham's prior representations that business origination would not be a significant factor in allocating the firm's profits. Thus, the provisions of the partnership agreement are not "clearly at variance" with Fordham's representation. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, *supra* at 711-713. There was no clear error, therefore, in the judge's conclusion that the plaintiff was reasonable in his reliance on Fordham's representation.[8]

Fordham argues next that the judge erred in concluding that the plaintiff was not unreasonable in relying on Fordham's representations because the plaintiff was a sophisticated corporate attorney. We reject this argument. The plaintiff's sophistication did not relieve Fordham of his obligation to deal with the plaintiff in an honest manner. *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, *supra* at 712-713.

---

[8]We also note that the judge's conclusion that the partnership agreement was not fully integrated was not clearly erroneous. A fully integrated agreement is a statement which the parties have adopted as a complete and exclusive expression of their agreement. Restatement (Second) of Contracts § 210 (1) (1981). We have stated that "the question of integration is one of fact reserved for the trial judge, whose resolution of that issue will not be reversed unless clearly erroneous." *Cambridgeport Sav. Bank* v. *Boersner*, 413 Mass. 432, 436-437 n.7 (1992). In the present case, the judge found that Attorneys Fordham and Starrett had agreed that they would divide equally between themselves their combined share of the firm's profits before they signed the partnership agreement. The judge noted, however, that the partnership agreement did not express this private agreement. The judge concluded, therefore, that the agreement was not fully integrated. There was no clear error.

Fordham also claims that the judge erred in finding that Fordham had engaged in misrepresentation because the plaintiff had not detrimentally relied on Fordham's representations. We disagree. The judge expressly found that the plaintiff would not have joined Kilburn, Fordham & Starrett if business origination was to have been a significant factor in allocating profits. Thus, it is clear that the plaintiff would not have joined Fordham & Starrett absent Fordham's misrepresentations. This alone constituted sufficient detrimental reliance. See *National Shawmut Bank* v. *Johnson,* 317 Mass. 485, 489-490 (1945).

Finally, Fordham argues that the judge erred in concluding that he had engaged in misrepresentation because his representations were true and that the founding partners had allocated the plaintiff's profits to him in accordance with Fordham's representations. We reject this argument for two reasons. First, Fordham's contention directly contradicts the judge's finding that Fordham had intended business origination to be the dominant factor in allocating the firm's profits, despite his assurances to the contrary to the plaintiff. Second, Fordham's contention that he had allocated the firm's profits in accordance with his representations directly contradicts the judge's finding that client origination was the dominant factor in determining each partner's share of the firm's profits.[9]

5. *Accounts receivable and work in process.* The plaintiff claims that the judge's interpretation of Paragraph 3 of the partnership agreement improperly denied him his right to a "fair share" of the net value of the firm's accounts receivable and work in process minus liabilities, reasonable reserves, and allowances.[10] The plaintiff argues that the judge's con-

---

[9]Fordham also argues that the judge's finding of misrepresentation was distinct from the misrepresentation which the plaintiff had alleged. This issue was not raised in the Superior Court. Thus it is not properly before us. See *Porter* v. *Treasurer & Collector of Taxes of Worcester,* 385 Mass. 335, 338 n.5 (1982).

[10]Paragraph 3 of the partnership agreement provides: "Except as hereinafter provided, upon retirement from the practice of law or withdrawal

clusion that the term "liabilities," as it appears in Paragraph 3 of the firm's partnership agreement, includes the aggregate sum of the firm's future lease payments, was clearly erroneous. We disagree.

We have stated that "[c]ontract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 222-223 (1981), quoting *United States v. Seckinger*, 397 U.S. 203, 213 n.17 (1970). Thus, we must "construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished." *Shea v. Bay State Gas Co., supra* at 223, quoting *Bryne v. Gloucester*, 297 Mass. 156, 158 (1937). As a result, the scope of a party's obligations cannot "be delineated by isolating words and interpreting them as though they stood alone. *Commissioner of Corporations & Taxation v. Chilton Club*, 318 Mass. 285, 288 (1945). Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded." *Boston Elevated Ry. v. Metropolitan Transit Auth.*, 323 Mass. 562, 569 (1949).[11]

---

from the firm without such retirement each partner shall be entitled to a fair share of the net value of unrealized accounts receivable and work in process of the firm, less liabilities. Such share shall be determined by the Founding Partners, taking into account such factors as they deem meet and proper, and shall be paid in not more than twenty-four (24) monthly installments." Thus, Paragraph 3 expressly authorized the founding partners to calculate a departing partner's "fair share" of the net value of the unrealized accounts receivable and work in process less liabilities.

[11]The Restatement (Second) of Contracts supports this practice of interpreting a word in accordance with the context in which it is used. The Restatement declares that "[t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances . . . ." Restatement (Second) of Contracts § 212 (1) (1981). One comment accompanying § 212 states in relevant part that "[a]ny determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and the relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing be-

In *Boston Elevated Ry.* v. *Metropolitan Transit Auth.*, *supra* at 568, we considered the scope of the word "liabilities." We noted that "liabilities" was "an appropriate word to express obligations sounding in contract or tort or founded upon a judgment." *Id.* at 568. We also stated that liabilities "has been held in some circumstances to include taxes." *Id.* Finally, we recognized that "[t]he word undoubtedly may comprise contingent obligations." *Id.* We concluded, therefore, that the effect of the word "liabilities" "will vary according to the subject to which [it] refer[s] and the circumstances in which" it is used. *Id.* As a result, we held that, in the circumstances of that case, the term "liabilities" did not include a capital gains tax resulting from the sale at issue. *Id.* at 572.

In the present case, the judge cited our decision in *Boston Elevated Ry.* v. *Metropolitan Transit Auth.*, *supra*, to support his conclusion that "[a] contractual obligation to pay monies is a liability." See *id.* at 568. The judge then decided that the firm's long-term office lease constituted a "liability" because it was a contractual obligation to pay money. The judge concluded, therefore, that the plaintiff was not entitled to any percentage of the firm's work in process or its accounts receivable because the "[f]irm's existing liabilities, including a long term lease, exceeded the [f]irm's work in process and accounts receivable by nearly [a] two to one margin without any reserves and allowances."

The plain meaning of the word "liabilities," in the context of the partnership agreement, certainly encompasses the firm's office lease. A partner is jointly liable for all debts and obligations of the partnership. G. L. c. 108A, § 15 (*b*) (1992 ed.).[12] The partnership's office lease was indisputably a monetary obligation for which each partner was jointly liable.

---

tween the parties." Restatement (Second) of Contracts, *supra* at § 212 comment b.

[12]A partner is jointly and severally liable for the wrongful acts of his partners. G. L. c. 108A, §§ 13 & 15 (*a*) (1992 ed.). A partner is also jointly and severally liable for another partner's misapplication of money or property. G. L. c. 108A, §§ 14 & 15 (*a*) (1992 ed.).

See *id.* We conclude, therefore, that the judge's conclusion that the office lease constituted a liability within the meaning of the firm's partnership agreement was not clearly erroneous.

The plaintiff argues next that the judge's interpretation of the word "liabilities" to include the lease was clearly erroneous because it fails to give Paragraph 3 of the partnership agreement effect as a rational business instrument. We disagree.

"We have said that a contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties." *Shane* v. *Winter Hill Fed. Sav. & Loan Ass'n*, 397 Mass. 479, 483 (1986). Similarly, the Restatement expounds that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203 (a) (1981). According to the plaintiff, the judge's interpretation of Paragraph 3 denies it the effect of a rational business instrument because a withdrawing partner would rarely be granted a share of the work in process and accounts receivable. We reject this argument.

At dissolution, a partner is entitled to firm profits only after all of the partnership's creditors have been satisfied and all capital contributions have been repaid. G. L. c. 108A, § 40 (*b*) (1992 ed.). Similarly, if the partnership's liabilities exceed its assets, then each partner must contribute toward the losses. G. L. c. 108A, §§ 18 (*a*) & 40 (*d*) (1992 ed.). The judge's interpretation of Paragraph 3 of the partnership agreement has the same effect as G. L. c. 108A, §§ 18 (*a*) & 40 (*b*) (1992 ed.). The plaintiff, as a withdrawing partner, is entitled to share in the partnership's accounts receivable and work in process which exceed the sum of the amounts owed to creditors and to contributors of capital as well as reasonable reserves and allowances. The lessor of the partnership's offices is a creditor of the firm. See *Gilman* v. *Taylor*, 266 Mass. 346, 347 (1929) (lessor was creditor of deceased where lessee's obligation to pay was definitely and

specifically required by terms of lease). If the partners had "woundup" the affairs of the partnership, the partnership's creditors would have to be ranked in the order of their priority. See G. L. c. 108A, § 40. The judge's interpretation of the term "liabilities" properly places the lessor's interest in the accounts receivable and work in process in a position that is superior to the withdrawing partner's interest. If the judge construed the term "liabilities" to exclude the lease, then the lessor would be the only creditor of the partnership whose interest in the partnership assets would be junior to a partner's interest. See G. L. c. 108A, § 40. Instead of denying Paragraph 3 the effect of a rational business instrument, the judge's interpretation properly enforces its intended logic.

The plaintiff claims next that the judge's interpretation of the term "liabilities" to include the lease was unreasonable and inequitable because it precluded him from sharing in the accounts receivable and work in process to which he was "entitled." We disagree.

The plaintiff acquiesced to the terms of Paragraph 3 when he signed the partnership agreement. As a result, the plaintiff agreed that his interest in accounts receivable and work in process at withdrawal would be junior to the claims of creditors. If the business of the partnership had been "wound up" after dissolution, the plaintiff would have been jointly liable, with his partners, for the monetary obligation due on the lease. G. L. c. 108A, § 15 (*b*). The judge found that the amount due on the lease alone exceeded the firm's accounts receivable and work in process, without considering the partnership's additional liabilities at dissolution. The judge's interpretation of the term "liabilities," therefore, was neither unreasonable nor inequitable. The plaintiff was "entitled" only to a "fair share" of the accounts receivable and work in process which exceeded the firm's liabilities, reserves, and allowances.

The plaintiff asserts several additional arguments claiming that the judge erred in interpreting the provisions of Paragraph 3 of the partnership agreement, thereby denying the plaintiff a fair share of the firm's work in process and ac-

counts receivable. We decline to address these arguments in light of our conclusion that the judge did not err in finding that the firm's office lease constituted a liability within the meaning of Paragraph 3 of the partnership agreement. The amount due on the lease still would exceed the sum of the firm's accounts receivable and work in process even if we were to conclude, which we do not, that the judge's interpretations of the remaining provisions of Paragraph 3 were clearly erroneous. There was no error in the judge's conclusion that the founding partners applied Paragraph 3 in a fair and reasonable manner despite the fact that they had the sole authority to determine what constituted a "fair share." See *Computer Sys. of Am., Inc.* v. *Western Reserve Life Assurance Co.*, 19 Mass. App. Ct. 430, 437-438 n.11 (1985), citing *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309, 314 (1924). Thus, we reject the plaintiff's claim that the founding partners violated their fiduciary duties to him in applying Paragraph 3 of the partnership agreement.

6. *Prejudgment interest.* The plaintiff claims that the judge erred in assigning prejudgment interest to him only from the date of the filing of the lawsuit. We disagree.

General Laws c. 231, § 6C (1992 ed.), provides for prejudgment interest on damages in "all actions based on contractual obligations" from the date of the demand or the breach. The implied covenant of good faith and fair dealing is a contractual obligation. *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 102 (1977). The plaintiff recovered a damage award of $75,538.48 on his claim that the founding partners had violated their fiduciary duties. The judge then awarded the plaintiff prejudgment interest on the damages award from the date on which the plaintiff filed his complaint. The plaintiff claims that the judge should have awarded him prejudgment interest from the date of the breach.

We have stated that "prejudgment interest is to be calculated from the date of the breach or demand, if established. If the date of the breach or demand is not established, pre-

judgment interest is to be calculated from the date of the commencement of the action." *Zimmerman* v. *Bogoff*, 402 Mass. 650, 663 (1988), quoting *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 125 (1986). The plaintiff argues that the breach occurred, at the latest, on March 31, 1987, when the defendants posted a check to the plaintiff covering his compensation for 1986. The judge, however, made no finding concerning either the date of the breach or whether the plaintiff made a demand. As a result, we conclude that the date of the breach was not sufficiently established. See *Zimmerman* v. *Bogoff, supra.* There was no error, therefore, in the judge's decision to grant the plaintiff prejudgment interest on his damages award from the date of the filing of the complaint.

*Judgment affirmed.*