Kern, Leila R., J.
Plaintiff Edith Ann Graham, Trustee of the Wile Family Trust, filed this contract action against the defendant, Copperbeech Partnership Limited, Inc. The Trust alleges that it is entitled to a share of proceeds from the sale of certain real property located in Westborough, Massachusetts. The matter is now before this court on the Trust’s motion for summary judgment. For the reasons set forth below, the Trust’s motion is ALLOWED.
BACKGROUND
This court summarizes the relevant facts in the light most favorable to the defendant. Remy v. MacDonald, 440 Mass. 675, 676 (2004).
In 1994 and early 1995, Copperbeech and the Trust were involved in negotiations for the purchase of approximately 70 acres of land owned by the Trust in Westborough. Copperbeech was interested in developing the land and constructing a residential subdivision called The Woodland Preserve. On March 20, 1995, Copperbeech and the Trust executed a purchase and sale agreement. Pursuant to the P&S, the Trust agreed to sell portions of the 70 acres of land to Copperbeech as lots over a period of time.[1]
A portion of the land sold to Copperbeech fronted Route 30 in Westborough. The remainder of the land was “backland,” which made up The Woodland Preserve. The Nourse Family Trust land bordered the northern border of lots 4, 5, 6, 7, 8, 9, and 10 of The Woodland Preserve subdivision. The Nourse parcel consisted of approximately 45.41 acres.
The same day the parties executed the P&S, they also executed an access agreement. The Access Agreement provided the following:
WHEREAS, Seller and Buyer recognize the utility of the roadway to the abutting land owners, who own *346 the parcel sometimes referred to as the “Nourse” parcel, as the Preserve has the potential to serve as access to the Nourse parcel. . .
The Access Agreement contemplated that if Copperbeech received any contribution from the owner of the Nourse parcel for a right of way or easement to the Nourse parcel, such contribution would be divided equally between Copperbeech and the Trust up to $340,000.00.[2]
The Town of Westborough purchased the Nourse parcel in July 1998 to build a school. On or about May 25, 1999, Copperbeech and the Town entered into an agreement whereby the Town agreed to pay Copperbeech approximately $1.5 million for the purchase of Lot 7. Lot 7 was necessaiy in order to provide access to a proposed school. In return for the payment of $1.5 million, Copperbeech was expected to build a road to the school, as well as to assume responsibility for the school’s infrastructure, such as sewer, water, and electriciiy. Before the Town purchased Lot 7, an access drive was built over Lot 7 and up to the proposed school.
On July 20, 1999, the Trust and Copperbeech executed an amendment (the Amendment) to the P&S Agreement. The Amendment provided, among other things, that the Trust would be paid off in one lump sum by Copperbeech upon the sale of any lot to a third parly that was to be used for some purpose other than building a home.[3] The Amendment did not mention the Access Agreement. By a quitclaim deed dated July 29, 1999, the Trust sold Copperbeech the remaining land in The Woodland Preserve for a price of $1,200,000.
Copperbeech conveyed Lot 7 to the Town by quitclaim deed on September 9, 1999.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Comm. of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party must satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The focus of the present motion is the Access Agreement and the requirements contained therein. The Access Agreement’s plain language becomes critical. The interpretation of an unambiguous agreement is an issue of law for the Court. Contract language must be construed in its usual and ordinary sense. See 116 Commonwealth Condo. Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A contract provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co., 426 Mass. at 381. The mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish ambiguity. See Lumbermans Mut. Cos. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
Generally, “[t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to an agreement as a rational business instrument in order to carry out the intent of the parties. See Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the court except insofar as it may turn on facts in genuine dispute. See Gross v. Prudential Ins. Co. of Am., Inc., 48 Mass.App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written agreement. See City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999). In construing the Access Agreement, the court must give effect to the intention of the parties, as expressed in the language employed, considered in the light of the context of the transaction and the purpose to be accomplished. See Starr, 420 Mass. at 190; Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981).
Copperbeech argues that summary judgment is inappropriate because there are genuine issues of material fact in dispute. First, Copperbeech claims there is a dispute as to whether the provisions of the Access Agreement were actually triggered by the transaction between the Town and Copperbeech. Specifically, Copperbeech contends that it is unclear whether it realized any net profit on the sale of Lot 7 to the Town.
Paragraph 4 of the Access Agreement is triggered in the event that Copperbeech “receives any contribution from the owners of the Nourse Parcel for access to right of way or easement to the Nourse parcel...” The term “contribution” is not defined in the Access Agreement. When a contract does not define its words, the court must interpret the language of the contract applying the ordinary and plain meaning of the language in question. See Kelly v. Dimeo, 31 Mass.App.Ct. 626, 629 (1991). In that regard, Webster’s Third New International Dictionary 496 (1986) defines “contribution” *347 as “the act of contributing” or “something that is contributed: a sum or thing voluntarily contributed.”[4]
In the instant case, the Town purchased Lot 7 for 1.5 million dollars. The 1.5 million dollars can certainly be considered a contribution. Paragraph four makes no mention of a net profit prerequisite. Moreover, the term “contribution” as used in its ordinary and plain meaning, cannot be interpreted so as to require Copperbeech to have realized a net profit on the transaction with the Town. Therefore, Copperbeech’s argument that it did not realize a net profit from the sale of Lot 7 is immaterial.
Copperbeech also claims that summary judgment is inappropriate because a genuine issue of material fact exists as to whether the Trust knew while it was negotiating the Amendment that it would make a claim for payment under the Access Agreement. Copperbeech contends that it would not have agreed to pay the Trust a lump-sum payment upon the sale of Lot 7. As an extension of this argument, Copperbeech also alleges that the execution of the Amendment extinguished the Access Agreement.
If the language of a contract is clear and without ambiguity, then extrinsic evidence as to its meaning is unnecessary, and indeed, inadmissible because such evidence could serve only to contradict, vary, or broaden an otherwise clear agreement. See Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997) (citing Gifford v. Gifford, 354 Mass. 247, 249 (1968)). Extrinsic evidence, commonly referred to as parol evidence, is admissible only if the contract contains some ambiguity that may be clarified or resolved through consideration of such evidence. Id.
In • the instant case, the language of both the Amendment and the Access Agreement is clear. As discussed above, the Access Agreement states that the Trust is entitled to an equal portion of any contribution up to $340,000.00 that Copperbeech received for granting access to the Nourse parcel. Because Copperbeech granted access to the Nourse parcel, the Trust was entitled to demand payment for its share. Furthermore, the terms of the Amendment made no mention of the Access Agreement, and therefore, had no bearing on the parties’ rights thereunder. Accordingly, the Trust’s motion for summary judgment must be allowed.
ORDER
For the reasons stated above, it is hereby ORDERED that the motion for summary judgment of Edith Ann Graham, Trustee of The Wile Family Trust is ALLOWED and judgment for the plaintiff should enter in the amount of $170,000.00.

 Paragraph 2.0(B) of the P&S Agreement provided: “This Agreement further anticipates that the sale will take place in three (3) stages or phases. The property consists of: 1) Four (4) frontage lots designated Phase I; 2) Approximately twenty-four (24) interior or back lots which are not subject to the 61A exemption, designated Phase II; and 3) Approximately thirteen (13) lots consisting of frontage and interior lots, which are subject to a Chapter 61A tax lien. Each phase will be conveyed by at least one (1) separate deed as defined below.”

 Paragraph 4 of the Access Agreement provided: “In the event Buyer receives any contribution from the owners of the Nourse parcel for access to right of way or easement to the Nourse parcel, such contribution shah be divided equally between the parties up to $340,000.00. Any amount received in excess of $340,000.00 shall be retained by Buyer.”

 Paragraph 9 of the Amendment provided in pertinent part: “If any of the property is resold or otherwise conveyed to any other party, excluding Classic Homes, Michael Hans, (and only for the purpose of selling house lots and houses on those lots) then the outstanding portion of the Promissory Note including all accrued interest becomes due and payable immediately to the Wile Family Trust. This provision as well as the five year balloon payment as indicated on the Promissory Note shall be evidenced by covenants in said Note and Mortgage.”

 Webster’s Third New International Dictionary 496 (1986), defines “contribute” as “to give or grant in common with others (as to a common fund or for a common purpose): give (money or other aid) for a specified object.”