Burnes, Nonnie S., J.
INTRODUCTION
This case is scheduled to commence trial tomorrow. This morning the court heard argument on five motions in limine of the defendants and one of the plaintiffs. The fifth of the defendants’ motions that the court heard requested that the court reserve for itself the claims of breach of fiduciary duty. The plaintiffs informed the court that they wished to waive their claim for a jury trial. The defendants had already informed the court that they were willing to waive a jury and confirmed that decision this morning. That would arguably mean that the various motions would not need to be decided until the disputed evidence was offered, there being no need to protect a party from prejudice from having the jury hear any evidence that might be inadmissible. Nevertheless, the court will decide certain of the motions, so that the parties may more efficiently plan their trial presentation. The court will defer decision on several motions
DISCUSSION
The Cambridge Company, Inc. (“Cambridge Company”) was formed sometime prior to 1985 to invest in and develop real estate. The three principals are the individual defendants in this case, John P. Fowler (“Fowler”), Jeffrey A. Millman (“Millman”) and Robert Lee Wolff, Jr. (“Wolff j. In 1985 Cambridge Company identified 23 East Street, Cambridge, as a potential development and investment opportunity. They formed the Maple East Associates Limited Partnership (“Maple East LP”) to acquire, renovate and manage the building. Millman, Fowler and Wolff were the general partners. They determined to encourage the tenants to invest in the building. Therefore, they invited the plaintiffs, Robert L. Fronk (“Fronk”), Jack Saltiel (“Saltiel”) and Edward S. Walter (“Walter”),[1] principals of Cambridge Digital, a potential tenant, to become limited partners and they did. All of this is a perfectly standard structure for the investment in a piece of commercial real estate.
Section 4 of the Partnership Agreement set out the Partnership’s “purpose”:
4. Purpose. The purpose of the partnership shall be (i) to acquire approximately 32,268 square feet of land and the six story concrete building thereon located at 23 East Street, Cambridge, Massachusetts (the “Property”); (ii) to renovate such building in such manner as the General Partners shall determine, (the “Project”); (iii) to own, operate and manage the Project; and (iv) to lease, sell, acquire or otherwise deal with the Project and other real estate in such manner as the General Partners shall determine.
Section 5.2 and 5.3 of the Partnership Agreement described certain “Authorized Acts.”
5.2. acquire by purchase, lease or otherwise any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purposes of the partnership;
5.3. own, construct, operate, maintain, finance, improve, sell, convey, assign, mortgage or lease any real estate and any personal property necessary, *662 convenient or incidental to the accomplishment of the purposes of the partnership;
Section 13.2 describes the rights and duties of the partners with respect to investment in other real estate.
13.2. It is expressly understood that a General Partner may engage in any other business or investment, including the ownership of or investment in real estate and the operation and management of real estate, and neither the partnership nor any of the partners thereof shall have any rights in and to said businesses or investments, or the income or profits derived therefrom.
By amendment dated December 12, 1996, and signed by all the partners, including Fronk, Saltiel and Walter, as limited partners, with advice of counsel, the “purpose” clause of the partnership agreement was amended. In addition, Fowler, Millman and Wolff resigned as the general partners and a single-purpose corporation called Maple Leaf Cambridge Corp. was substituted as the general partner.
Pursuant to the amendment, the “purpose” clause read:
(a) Notwithstanding any provision hereof to the contrary, the following shall govern: The nature of the business and of the purposes to be conducted and promoted by the partnership, is to engage solely in the following activities:
i. To own, hold and operate a certain parcel of real property, together with all improvements located thereon, at 23 East Street, in the City of Cambridge, State of Massachusetts (the “Property”)
The plaintiffs agree that one of the effects of this clause was to prevent Maple East LP from acquiring additional real property. Section 5, describing the authorized acts of the partnership to further its purpose, was not amended.
On November 11, 1995, Fowler, Millman and Wolff established another real estate investment vehicle, WS Lexington Corporation, which became the trustee of WS Lexington Associates Limited Partnership. In 1996 or early 1997, Wolff and the Cambridge Company signed an agreement to acquire 1 East Street and on February 25, 1998 (approximately a year later and more than a year after the amendment to the partnership agreement) the Cambridge Company executed a Purchase and Sale Agreement for 1 East Street. On June 15, 1998, WS Lexington Corp., as trustee, purchased 1 East Street from Wolff and the Cambridge Company.
At no time did the Cambridge Company, WS Lexington Corporation or Fowler, Millman or Wolff offer Maple East LP, Fronk, Saltiel or Walter the opportunity to invest in 1 East Street. Neither Fronk, Saltiel nor Walter were notified of the possible purchase of 1 East Street by Wolff and the Cambridge Company, the actual purchase of 1 East Street nor of the purchase of the property from them by WS Lexington Corporation.
Maple East LP leased parking from the owners of 1 East Street both before and after the acquisition of the property by Wolff and the Cambridge Company. If Maple East LP had purchased the property, the tenants of 23 East Street (or the partnership, however it worked) would not have had the expense of leasing the parking. The new owners at some time doubled the rates.
Prior to the amendment to the partnership agreement, the Cambridge Company and Fowler, Millman and Wolff invested in 9 East Street. They did not notify Maple East LP, Fronk, Saltiel or Walter of the possible purchase nor of any opportunity to invest.
The defendants argue that the original partnership agreement allowed the partnership to invest in and manage only 23 East Street. They base this argument on the partnership agreement. First of all, they say that this is a typical vehicle for investing in real estate. While one can have a general purpose real estate investment partnership, as the Cambridge Company is, Maple East LP is a single-purpose real estate partnership. The purpose of the partnership is to acquire 23 East Street, defined as the “Property,” Section 4(1); to renovate the building, defined as the “Project,” Section 4(ii); to own, operate and manage the Project, Section 4(iii); and to lease, sell, acquire or otherwise deal with the Project, Section 4(iv). The defendants say that it is clear that this is a single-property partnership because Section 13 explicitly allows a General Partner to invest in other real estate and neither the partnership nor any of the partners shall have the right to be included. The court notes, as well, that Section 5 authorizing acquisition of real property to accomplish the purposes of the partnership was not amended in 1996, with a negative inference that no one thought that Section 5 authorized the investment in another real estate development project.
At the very least, say the defendants, even if the original partnership did not bar the investment in other real estate development opportunities, after the partners signed the amendment to the partnership agreement, there can be no argument that Maple East LP even could participate in the purchase of 1 East Street. Its single purpose was solely to “own, hold and operate” 23 East Street.
The plaintiffs say, on the other hand, that the defendants are reading key language out of the original agreement. Section 4(iv) says that the partnership may acquire “other real estate.” And if that is so, Section 5 describes the purpose for which that other real estate may be acquired. The plaintiffs say that there is nothing in the partnership agreement which limits the type of property which may be purchased, so long as it will benefit the partnership. The plaintiffs argue that the defendants were, at least, required to disclose to *663 the limited partners that the opportunity to purchase 1 East Street was available so that the partnership could decide whether to invest. To do otherwise would deprive the partnership of a potential opportunity and would be a breach of the defendants’ fiduciary duties to the other Maple East LP partners.
“Normally, a corporate opportunity is thought of as a business or investment opportunity within the sphere of, or somehow related to, the corporation’s own activities.” Cumberland Farms v. Cumberland Farms, 284 F.3d 216, 228 (1st Cir. 2002), citing Durfee v. Durfee & Canning, Inc., 80 N.E.2d 522, 528 (Mass. 1948). Furthermore, “(t]he corporate opportunity doctrine is best understood as a ‘rule of disclosure.’ ” Id. at 227, citations omitted. Certainly, after the amendment of the partnership agreement, investment in other real estate was not within the corporation’s own activities. The plaintiffs argue, however, that Wolff, Millman and Fowler still had a duty to disclose the opportunity, because the partnership might have been able to invest if it reorganized itself to allow such an investment.[2] There is no case cited which would support the argument that the fiduciaiy has to disclose an opportunity that the business could take advantage of only if it changed its business purpose. For example, in Cumberland Farms, the court gave an example of a corporate opportunity that would have to be disclosed. The company was in the business, among other things, of buying and operating gas stations in the New England area. If a director or officer learned of the availability of a gas station in the New England area, she would have to disclose that opportunity to the corporation before she invested herself. The court did not say, however, that if an officer or director learned of the possible acquisition of just any business opportunity, she would have to disclose that opportunity, although presumably Cumberland Farms, if not already authorized to do all sorts of business, could have amended its Articles of Incorporation to allow it to invest.
Sophisticated parties may structure their relationships by contract. And when they do the court must give effect to the agreements, reasonably read, in order to effect the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). One cannot properly interpret a contract by isolating some one term and reading it out of context. Id. at 190. In neither Cumberland Farms nor Geller, the two cases on which the plaintiffs rely most heavily, was there a contract delineating the rights and obligations of the parties. That is to say, the parties may agree, as they did here, that the sole purpose of the Maple East LP would be to invest in and manage 23 East Street. Specifically, within the partnership the partners had a fiduciaiy duty to disclose opportunities; outside the partnership there was no duly to disclose to the partners of Maple East LP the acquisition of other property, including 1 East Street. The acquisition of 1 East Street was outside the purposes of this partnership and was not a corporate opportunity of which the partnership could take advantage. Therefore, there is no need for the court to hear evidence concerning the acquisition of 1 East Street; without doubt, at least after 1996, Maple East LP was not authorized to invest in other real estate properties. Even the plaintiffs agree with that. Furthermore, the court will not hear any evidence of alleged damages related to a claimed loss of a corporate opportunity based on the argument that the plaintiffs did not have the chance to invest in 1 East Street.[3]
This analysis does not entirely address the whole of the plaintiffs’ complaint on breach of fiduciaiy duty, however. The plaintiffs claim that the defendants’ acquisition of 1 East Street harmed them because the defendants acquired the parking that 23 East Street needed and then doubled the price. The facts may eventually not bear out this claim, but on the current state of things the court believes that it cannot make a decision that the defendants did not breach their fiduciaiy duties to the partners of 23 East Street because of the charges for parking. If Wolff, Millman and Fowler put themselves in a position of conflict with the Maple East LP by their handling of the parking available at 1 East Street, they may have breached their fiduciaiy to the partners. I do have in mind, however, that the partnership agreement allows related party transactions under certain circumstances. That is, however, the only area on which the court will possibly entertain evidence of breach of fiduciaiy on the acquisition of 1 East Street.
As to 9 East Street: It appears clear to the court that, from the beginning, Maple East LP was a single-purpose partnership for the development and management of 23 East Street. The defendants have not explicitly moved in limine for evidence on that investment to be precluded and the plaintiffs have not had a forthright opportunity to tell me why that may be an incorrect reading of what appears to be an unambiguous contract (and standard real estate partnership investment structure). Therefore, the court will not decide this issue at this time. And because I am not deciding this issue at this time, likewise I will reserve a decision on the defendants’ motion to preclude evidence of damage from any loss of the opportunity to invest in 9 East Street.
There are three remaining motions in limine: (1) the defendant’s motion to exclude evidence regarding related-party transactions, (2) the defendants’ motion to exclude evidence regarding parking and (3) the plaintiffs’ motion to exclude evidence that Cambridge Digital failed to pay rent on time and within a year or so of leasing the premises went bankrupt and vacated the premises.
(1)1 am not convinced by the defendants’ argument on the statute of limitations nor by the plaintiffs’ argument that disgorgement is the only remedy for the *664 defendants’ failure to abide by the disclosure requirements of the partnership agreement. Since this motion is not as time sensitive as the “corporate opportunity” claim, I will reserve a decision on this motion until the evidence is offered.
(2) Likewise, with the defendants’ motion on parking, I will reserve decision. I am unclear just what the plaintiffs’ argument is — Did the defendants overcharge? Do the plaintiffs object as they do to the other related-party transactions? Is the argument that the valuation of 23 East Street was impaired because of the parking situation? So until I understand just what the complaint is, I cannot decide this motion.
(3) I told counsel I would reserve on the plaintiffs’ motion until later in the trial as the evidence came up, so that I could have a more informed view of the case and the evidence and the possible relevance of this evidence.
ORDER
For the reasons set out in this memorandum, the court allows the defendants’ motion to preclude the introduction of evidence concerning the acquisition of 1 East Street, except for the possible evidence of any conflict of interest between the partners arising from the charging for parking; allows the defendants’ motion with respect to any claimed damages from the acquisition of 1 East Street, other than with respect to the parking; reserves the motion on any other parking claim; reserves the question of any breach of fiduciary duly from the acquisition of 9 East Street and any possible damages resulting from that acquisition; and reserves decision on the defendants’ motion regarding related-pariy transactions and the plaintiffs’ motion regarding any breach of the lease by Cambridge Digital and the financial condition of Cambridge Digital.

 Mr. Walter was the original limited partner for the Walter family; in 1996, Maña L. Walter, his wife, became the limited partner. Both Walters will be referred to as “Walter.”

 There is no evidence that Wolff, Fowler and Millman were negotiating for or sought to acquire 1 East Street before the amendment. This case is now 4 years old and, from the looks of the three huge exhibit binders that have been delivered to the court, there has been extensive discovery. The best that the plaintiffs can offer to support even an inference that the general partners of Maple East LP were in the process of acquiring 1 East Street at the time of the amendment is (1) that Wolff could not remember if he was negotiating for the property before the amendment (2) but, since the general partners had earlier acquired 9 East Street and they had formed a real estate partnership that was years later the eventual acquisition vehicle, they must have been. Furthermore, say the plaintiffs, the general partners had communicated to the limited partners (I assume that means them, too) of their interest in acquiring property in the area around 23 East Street. That cannot have been news to the limited partners, who knew the geographical area well. And, lastly, it is highly questionable whether Maple East LP was even authorized to invest in other real estate, including 1 East Street, before the amendment.

 A corporate opportunity belongs to the business, not the individuals; that is the premise for the doctrine. Therefore, if the plaintiffs’ real complaint is that they, as individuals, were not offered the opportunity to invest (see, e.g., Opposition of the Plaintiffs dated February 16, 2006 at p. 26), such a complaint does not even fall under the corporate opportunity doctrine.